Honorable Benjamin H. Settle

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10  CITY OF TACOMA, a municipal corporation,  )
                                            )
11                          Plaintiff,       )   No. C11-5747 BHS
                                            )
12          v.                               )   NOTICE OF FILING OF ADDITIONAL
                                            )   STATE COURT RECORDS (CR 101(b) and
13  CLEAR CHANNEL OUTDOOR, INC., a           )   Chapter 89 of Title 28, U.S.C.)
    Delaware corporation,                    )
14                                          )
                                            )
15                          Defendant.       )
                                            )

16  TO:    CITY OF TACOMA, Plaintiff

17  AND TO:    Shelley M. Kerslake and Kenyon Disend, PLLC, Its Attorney

18          PLEASE TAKE NOTICE that, pursuant to Civil Rule 101(b) and Chapter 89 of Title 28,

19  U.S.C., defendant Clear Channel Outdoor hereby files with this Court true and correct copies of

20  the following additional documents previously filed with the Pierce County Superior Court at

21  Cause No. 11-2-12765-1:

22          1.     Affidavit of Service of:  Summons; Complaint for Declaratory Judgment to

23  Invalidate Settlement Agreement (Ex. A);

24          2.     Confirmation of Service (Ex. B); and

25          3.     Notice to Superior Court of Removal to Federal Court (Ex. C).

26

NOTICE OF FILING OF ADDITIONAL STATE COURT
RECORDS (CR 101(b) and Chapter 89 of Title 28, U.S.C.)
(C11-5747 BHS) - 1

1   Together with the Summons and Complaint and Notice of Appearance filed with the Notice of

2   Removal, these comprise true and complete copies of all the records and proceedings in the State

3   Court proceeding.

4       DATED this 29th day of September, 2011.

5

6                                       BYRNES KELLER CROMWELL LLP

7                                       By /s/ Steven C. Minson

8                                           Paul R. Taylor, WSBA #14851
                                            Steven C. Minson, WSBA #30974

9                                       Byrnes Keller Cromwell LLP
                                        1000 Second Avenue, 38th Floor

10                                      Seattle, WA  98104
                                        Telephone:  (206) 622-2000

11                                      Facsimile:  (206) 622-2522
                                        Email:  ptaylor@byrneskeller.com

12                                              sminson@byrneskeller.com

13                                      OF COUNSEL

14                                      Mark D. Hopson*
                                        Gordon D. Todd*

15                                      Joseph R. Guerra*
                                        SIDLEY AUSTIN LLP

16                                      1501 K Street, N.W.
                                        Washington, D.C. 20005

17                                      Telephone:  (202) 736-8000
                                        Facsimile:  (202) 736-8711

18                                      Emails:  mhopson@sidley.com
                                                 gtodd@sidley.com

19                                               jguerra@sidley.com
                                        *Admitted Pro Hac Vice

20                                      Attorneys for Defendant Clear Channel Outdoor

21

22

23

24

25

26

NOTICE OF FILING OF ADDITIONAL STATE COURT
RECORDS (CR 101(b) and Chapter 89 of Title 28, U.S.C.)
(C11-5747 BHS) - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

## CERTIFICATE OF SERVICE

2

The undersigned attorney certifies that on the 29th day of September, 2011, I
electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which
will send notification of such filing to the following:

3

4

5

Shelley M. Kerslake
Kenyon Disend, PLLC
11 Front Street South
Issaquah, WA  98027-3820

6

7

8

/s/ Steven C. Minson

9

Paul R. Taylor, WSBA #14851
Byrnes Keller Cromwell LLP

10

1000 Second Avenue, 38th Floor
Seattle, WA  98104

11

Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522

12

ptaylor@byrneskeller.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF FILING OF ADDITIONAL STATE COURT
RECORDS (CR 101(b) and Chapter 89 of Title 28, U.S.C.)
(C11-5747 BHS) - 3

# EXHIBIT A



11-2-12765-1    37017852    AFSR    08-26-11

FILED
IN COUNTY CLERK'S OFFICE

A.M. **AUG 25 2011** P.M.

PIERCE COUNTY, WASHINGTON
KEVIN STOCK, County Clerk
BY_____ DEPUTY

## SUPERIOR COURT, STATE OF WASHINGTON, COUNTY OF PIERCE

CITY OF TACOMA, a municipal corporation,

Plaintiff(s),

Vs.

CLEAR CHANNEL OUTDOOR, INC., a Delaware corporation,

Defendant(s).

NO. 11-2-12765-1

AFFIDAVIT OF SERVICE OF: SUMMONS; COMPLAINT FOR DECLARATORY JUDGMENT TO INVALIDATE SETTLEMENT AGREEMENT.

STATE OF WASHINGTON     )
                        ) ss.
COUNTY OF KING          )

The undersigned, being first duly sworn, on oath states:

That I am now, and at all times herein mentioned, was a citizen of the United States and a resident of the State of Washington, over the age of 18 years, not a party to or interested in the above entitled action, and am competent to be a witness therein.

That at 11:30 A.M. on August 19th, 2011, at 300 Deschutes Way Southwest, Suite 304, Tumwater, Washington, I duly served the above-described documents in the above-described matter upon Clear Channel Outdoor, Inc., by then and there personally delivering a true and correct copy thereof by leaving the same with Juanita Huey, Customer Service Associate for Corporation Service Company, its Registered Agent.

TIM BAYER        SNOHOMISH CO. # 201002179001

| | |
|---|---|
| Service Fees: | 12.00 |
| Ferry tolls: | |
| Travel: | 56.00 |
| SSA: | |
| Trace: | |
| Bad Address: | |
| Aff./Notary Fee: | 12.00 |
| Special Fee: | |
| Process Pick Up: | 22.50 |
| **TOTAL** | **$102.50** |

SUBSCRIBED AND SWORN to before me on:

8-23-11

WILLIAM P. LUTKUS
NOTARY PUBLIC in and for the State
of Washington residing at: Seattle.
My commission expires: 10-01-14.

WILLIAM P. LUTKUS
COMMISSION EXPIRES
NOTARY
PUBLIC
10-01-14
STATE OF WASHINGTON

ORIGINAL

15868 8/26/2011 848348

SUPERIOR COURT OF WASHINGTON FOR PIERCE COUNTY

CITY OF TACOMA, a municipal
corporation,

                     Plaintiff,

        vs.

CLEAR CHANNEL OUTDOOR, INC., a
Delaware corporation,

                    Defendant.

NO. 11-2-12765-1

SUMMONS

TO:   CLEAR CHANNEL OUTDOOR, INC.
       c/o Corporation Service Company
       300 Deschutes Way SW, Suite 304
       Tumwater, WA 98501

    A lawsuit has been started against you in the above-entitled Court by the above-named plaintiff. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

    In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the undersigned attorney for plaintiff within twenty (20) days after the service of this Summons if served within the State of Washington, and sixty (60) days if served outside the State of Washington, excluding the



Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

SUMMONS - 1

# EXHIBIT B

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

September 23 2011 4:02 PM

KEVIN STOCK
COUNTY CLERK
NO: 11-2-12765-1

Hon. Frank Cuthbertson
Dept. 21

1

2

3

4

5

6

7        SUPERIOR COURT OF WASHINGTON FOR PIERCE COUNTY

8    CITY OF TACOMA, a municipal                NO.  11-2-12765-1
     corporation,
9                                               CONFIRMATION OF SERVICE
                                  Plaintiff,    (CS / CSSRV)
10
             vs.
11
     CLEAR CHANNEL OUTDOOR, INC., a
12   Delaware corporation,
13
                                 Defendant.
14
     **CS      [X]    All the named defendants/petitioners/respondents have been served,**
15                    **have joined or have accepted service in writing.** (Check if appropriate,
                      otherwise check the box below.)
16   **CSSRV [ ]    One or more named defendants have not yet been served.**
                    (If this box is checked, an additional confirmation of service must be filed
17                  pursuant to subsection (b) when service is obtained and the following
                    information must be provided.)
18
     The following defendants have been served or have joined or accepted service:
19
     _____
20
     The following defendants have not yet been served:
21   _____

     Reasons why service has not yet been obtained:
22   _____

     How service will be obtained:
23   _____

     Date by which service is expected to be obtained:
24   _____

     No other named defendants remain to be served.
25



Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

CONFIRMATION OF SERVICE - 1

1   A status conference is requested regarding:

2

3   **Family Law Cases only (PCLR 40(d)):** The following petitioner/respondent has been served or accepted service of the Order Assigning Case to Department: _____

4   If Service has not been made, state the reasons why and the date by which service will be accomplished: _____

5

6       DATED this 1st day of September, 2011.

7                                    KENYON DISEND, PLLC

8                             By _____

9                                    Shelley M. Kerslake
                                     WSBA No. 21820
10                                   Attorneys for Plaintiff,
                                     City of Tacoma
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

CONFIRMATION OF SERVICE - 2

# EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13

SUPERIOR COURT OF WASHINGTON IN AND FOR PIERCE COUNTY

| | |
|---|---|
| CITY OF TACOMA, a municipal corporation, )<br>                                Plaintiff, )<br>)<br>v.                               )<br>)<br>CLEAR CHANNEL OUTDOOR, INC., a )<br>Delaware corporation, )<br>)<br>                          Defendant. )<br>) | No. 11-2-12765-1<br><br>NOTICE TO SUPERIOR COURT OF<br>REMOVAL TO FEDERAL COURT<br><br>**CLERK'S ACTION REQUIRED** |

14  TO:    CLERK OF THE PIERCE COUNTY SUPERIOR COURT

15        NOTICE IS HEREBY GIVEN, pursuant to 28 USC § 1441, that on September 16,

16  2011, defendant Clear Channel Outdoor, Inc., filed in the U.S. District Court for the Western

17  District of Washington a Notice of Removal of the above-entitled action.  A copy of the

18  Notice of Removal is attached hereto.

19        YOU ARE ALSO ADVISED that contemporaneous with filing of the attached copy

20  of the Notice of Removal, the Superior Court of Washington for Pierce County ceased to have

21  jurisdiction over this action and may proceed no further unless and until the case is remanded.

22        DATED this 16th day of September, 2011.

23                               BYRNES KELLER CROMWELL LLP

24

25                               By /s/ Paul R. Taylor
                                 Paul R. Taylor, WSBA #14851
26                               Steven C. Minson, WSBA #30974
                                 Attorneys for Defendant
                                 Clear Channel Outdoor, Inc.

NOTICE TO SUPERIOR COURT OF REMOVAL TO FEDERAL
COURT - 1

1

## CERTIFICATE OF SERVICE

2     The undersigned attorney certifies that on the 16th day of September, 2011, a true
copy of the foregoing pleading was served upon the following individuals:

3

4     **VIA EMAIL & MAIL**

5     Shelley M. Kerslake
Kenyon Disend, PLLC

6     11 Front Street South
Issaquah, WA  98027-3820

7

8                                    /s/ Paul R. Taylor

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE TO SUPERIOR COURT OF REMOVAL TO FEDERAL
COURT - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10  CITY OF TACOMA, a municipal corporation, )
                                           )
11                            Plaintiff,   )  No.
                                           )
12                   v.                    )  NOTICE OF REMOVAL
                                           )  (28 USC § 1441)
13  CLEAR CHANNEL OUTDOOR, INC., a         )
    Delaware corporation,                  )
14                                         )
                                           )
15                            Defendant.   )
                                           )

16
17      Pursuant to 28 USC § 1441, defendant Clear Channel Outdoor, Inc., removes this action

18  from the Superior Court of the State of Washington for Pierce County to the United States

19  District Court for the Western District of Washington at Tacoma.

20  **A.    <u>JURISDICTION</u>**

21      This Court has diversity jurisdiction under 28 USC § 1332 because the parties are citizens

22  of different states and the amount in controversy exceeds $75,000, as follows:

23          **(i)    <u>Citizenship</u>.**

24      Plaintiff City of Tacoma is a Washington municipal corporation and a citizen of

25  Washington.

26

NOTICE OF REMOVAL - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1     Defendant Clear Channel Outdoor, Inc. ("CCO" or "Clear Channel"), is a Delaware

2     corporation with its principal place of business in Texas.[1]  Therefore, CCO is a citizen of both

3     Delaware and Texas.

4          **(ii)**     **Amount in Controversy.**

5     Where a plaintiff seeks declaratory relief, "the amount in controversy is measured by the

6     value of the object of the litigation." Hunt v. Washington State Apple Advertising Comm'n, 432

7     U.S. 333, 347 (1977).  Here, the City seeks declaratory relief "invalidating" the Settlement

8     Agreement that it negotiated with CCO and the City Council approved and which formed the

9     basis on which this Court dismissed prior litigation between the parties, Clear Channel v. City of

10    Tacoma, C07-5407 BHS.[2]  By trying to invalidate the Settlement Agreement, the City is

11    breaching its obligations under the Settlement Agreement to avoid paying CCO damages

12    significantly in excess of $30 million.

13         The prior litigation arose in 2007, when the City purported to force CCO to remove

14    almost 200 signs without paying compensation.  At that time, CCO valued its signs in the City at

15    more than $30 million.[3]  Because the City's attempt to enforce its Sign Code violated CCO's

16    rights under the United States and Washington Constitutions and its rights under certain

17    Washington statutes, CCO sued the City, seeking declaratory relief and damages.

18         In September 2010, the parties settled the prior litigation.  As a part of the settlement, the

19    City acknowledged "Clear Channel's vested rights with respect to its existing conforming and

20    legally nonconforming billboard signs and relocation permits."[4]

21         The Settlement Agreement further provided that:

22

23

24

> Nothing herein shall be construed to limit or impair the City's
> authority to enact ordinances or regulations governing signs or to
> limit or impair the City's police power, provided, however, that, if
> the City does so in a manner that limits, conflicts with or is
> inconsistent with Clear Channel's vested rights as acknowledged in

25

26

---

[1] Decl. of Olivia Lippens in Supp. of Clear Channel's Notice of Removal ("Lippens Decl.") ¶ 2.
[2] The Order of Dismissal is attached as Ex. 1.
[3] Lippens Decl. ¶ 3.
[4] See Settlement Agreement p. 2 at ¶ 4 (attached hereto as Ex. 2, at Ex. A).

NOTICE OF REMOVAL - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

this Agreement, it shall pay to Clear Channel any monetary loss arising therefrom, including the fair market value for removed signs or elimination of relocation permits as a result of such ordinances or regulations.[5]

The City recently enacted a new ordinance regulating billboards which purports to require CCO to remove several hundred billboard faces by March 1, 2012, or be subject to civil and potentially criminal penalties if it does not. Contrary to the requirements of the Settlement Agreement, the ordinance does not make any provision for just compensation, and the City has not offered any compensation. Through its actions, the City has made it clear that it has no intent to comply with its contractual obligations under the Settlement Agreement and that is the issue before this Court.[6] The fair market value of the affected signs is in excess of $75,000.[7]

**B.    SERVICE OF INITIAL PLEADING**

Defendant CCO was served with a copy of the Complaint on or about August 19, 2011. This Notice of Removal is timely filed with this Court within 30 days of such service as required by 28 USC § 1446(b). See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999).

**C.    CONSENT OF OTHER DEFENDANTS**

CCO is the only defendant in this action.

**D.    NOTICE**

Pursuant to 28 USC § 1446(d), a copy of this Notice of Removal is being served on plaintiff and a copy is being filed with the Clerk of the Superior Court of the State of Washington for Pierce County.

---

[5] Id. p. 3 at ¶ 5.
[6] In addition to diversity jurisdiction upon removal of this action, the Court also has the inherent authority to regulate its docket, including the authority to protect its prior rulings against inconsistent state court action. This Court dismissed the prior litigation subject to the enforceability of the Settlement Agreement that the City now seeks to disavow. See Clear Channel v. City of Tacoma, C07-5407 BHS, Dkt. 33, attached hereto as Ex. 1.
[7] Lippens Decl. ¶ 4.

NOTICE OF REMOVAL - 3

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

E.      **STATE COURT FILE**

2

        The only process or pleadings served by or upon CCO in the state court proceeding is the

3

Summons and Complaint and Clear Channel's Notice of Appearance.  True and correct copies of

4

the Summons and Complaint and Notice of Appearance are attached hereto as Exs. 2 and 3.

5

        DATED this 16th day of September, 2011.

6

7
                                        BYRNES KELLER CROMWELL LLP

8
                                        By /s/ Paul R. Taylor
9                                          Paul R. Taylor, WSBA #14851
                                           Steven C. Minson, WSBA #30974
10                                      Byrnes Keller Cromwell LLP
                                        1000 Second Avenue
11                                      38th Floor
                                        Seattle, WA  98104
12                                      Telephone:  (206) 622-2000
                                        Facsimile:  (206) 622-2522
13                                      Email:  ptaylor@byrneskeller.com
                                                sminson@byrneskeller.com
14                                      Attorneys for Defendant
                                        Clear Channel Outdoor, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF REMOVAL - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 16th day of September, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Shelley M. Kerslake
> Kenyon Disend, PLLC
> 11 Front Street South
> Issaquah, WA  98027-3820

/s/ Paul R. Taylor
Paul R. Taylor, WSBA #14851
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
ptaylor@byrneskeller.com

NOTICE OF REMOVAL - 5

# EXHIBIT 1

The Honorable Benjamin H. Settle

1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT
9                            WESTERN DISTRICT OF WASHINGTON
                                       AT TACOMA

10    CLEAR CHANNEL OUTDOOR, a Delaware         )
11    corporation,                              )
                                                )   No. C07-5407 BHS
12                               Plaintiff,     )
                                                )   STIPULATION AND ORDER OF
13            v.                                )   DISMISSAL
                                                )
14    CITY OF TACOMA, a municipal corporation;  )
      and JOHN W. HARRINGTON, JR., an           )
15    individual,                               )
                                 Defendants.    )
16
            The undersigned counsel stipulate that this matter is dismissed without prejudice and

17    subject to the terms and conditions in the attached Agreement Re Dismissal of Lawsuit.

18          DATED this 13th day of October, 2010.

19

20    BYRNES & KELLER LLP                      KENYON DISEND, PLLC

21
      By /s/ Paul R. Taylor                    By /s/ Shelley M. Kerslake per email author.
22      Paul R. Taylor, WSBA #14851              Shelley M. Kerslake, WSBA #21820
        Steven C. Minson, WSBA #30974            Chris D. Bacha, WSBA #16714
23    1000 Second Avenue, 38th Floor           11 Front Street South
      Seattle, WA 98104                        Issaquah, WA 98027-3820
24    Telephone: (206) 622-2000                Telephone: (206) 433-1846
      Facsimile: (206) 622-2522                Facsimile: (425) 392-7071
25    ptaylor@byrneskeller.com                 shelley@kenyondisend.com
      sminson@byrneskeller.com                 chris@kenyondisend.com
26    Attorneys for Plaintiff Clear Channel Outdoor   Attorneys for Defendant City of Tacoma


STIPULATION AND ORDER OF DISMISSAL (C07-5407 BHS) - 1

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

## ORDER

2

3      Based upon the foregoing, this matter is dismissed without prejudice and subject to the

4 terms and conditions of the attached Agreement Re Dismissal of Lawsuit.

       DATED this 13th day of October, 2010.

5

6

7

8
                                                    _____
                                                    BENJAMIN H. SETTLE
9                                                   United States District Judge

Presented by:

10

BYRNES & KELLER LLP

11

12 By /s/ Paul R. Taylor
      Paul R. Taylor, WSBA #14851
13    Steven C. Minson, WSBA #30974
   1000 Second Avenue, 38th Floor
14 Seattle, WA  98104
   Telephone:  (206) 622-2000
15 Facsimile:  (206) 622-2522
   ptaylor@byrneskeller.com
16 sminson@byrneskeller.com
17 Attorneys for Plaintiff Clear Channel Outdoor

18

KENYON DISEND, PLLC

19

20 By /s/ Shelley M. Kerslake per email author.
      Shelley M. Kerslake, WSBA #21820
21    Chris D. Bacha, WSBA #16714
   11 Front Street South
22 Issaquah, WA  98027-3820
   Telephone: (206) 433-1846
23 Facsimile: (425) 392-7071
   shelley@kenyondisend.com
24 chris@kenyondisend.com
   Attorneys for Defendant City of Tacoma
25

26

STIPULATION AND ORDER OF DISMISSAL (C07-5407 BHS) - 2

## AGREEMENT RE DISMISSAL OF LAWSUIT

1.       Upon execution of the attached Settlement Agreement by the City, the parties shall file a Stipulated Dismissal of the lawsuit.  If the City thereafter attempts to enforce the provisions of TMC 13.06.520N(6) ("Amortization"), as that provision exists as of the date that the City signs the Settlement Agreement, and Clear Channel files a lawsuit challenging such action, any such lawsuit shall be deemed to have been filed on the date the lawsuit was originally filed for purposes of the statute of limitations and laches.

2.       The City agrees that it will continue to comply with and be bound by the terms of the Stipulated Injunction in the pending case during the period from when it signs the Settlement Agreement to a date three weeks after the expiration of the applicable Option Period.  If Clear Channel refiles the lawsuit during that period, the terms of the Stipulated Injunction shall continue in effect until the conclusion of the lawsuit, including all appeals.

3.       The City agrees to notify Clear Channel in the event of a third-party challenge to all or any portion of the Settlement Agreement or any Ordinance adopted in connection with the Settlement Agreement.  If such challenge is made, Clear Channel may, at its sole discretion, elect to toll the Sign removal requirements in Paragraph 2 of the Settlement Agreement until the conclusion of the lawsuit, including all appeals, by giving written notice of such election to the City within 30 days of service of such challenge upon Clear Channel.

4.       In the event the Settlement Agreement or any resulting Ordinance is wholly or partially invalidated by a final non-appealable court order issued as a result of a third-party challenge, and the City thereafter attempts to enforce TMC 13.06.520N(6) as it now exists, then Clear Channel shall have the option, at its sole discretion, to refile the lawsuit under the terms of Paragraph 1 above.

# ORIGINAL

5.    Should the City fail to comply with all or any portion of the Settlement Agreement, Clear Channel shall have the right to refile the lawsuit pursuant to the terms of Paragraph 1 above, in addition to the remedies set forth in the Settlement Agreement.

DATED this _6th_ day of August, 2010.

Clear Channel
Olivia Lippens
President
Ceo Seattle

Elizabeth A. Pauli
City Attorney
City of Tacoma

# ORIGINAL

# EXHIBIT 2



1
2
3
4
5
6
7

SUPERIOR COURT OF WASHINGTON FOR PIERCE COUNTY

8   CITY OF TACOMA, a municipal       NO. 11-2-12765-1
9   corporation,

                                       SUMMONS
10                          Plaintiff,

11              vs.

12  CLEAR CHANNEL OUTDOOR, INC., a
13  Delaware corporation,

14                          Defendant.

15      TO:   CLEAR CHANNEL OUTDOOR, INC.
16            c/o Corporation Service Company
              300 Deschutes Way SW, Suite 304
17            Tumwater, WA  98501

18      A lawsuit has been started against you in the above-entitled Court by the above-

19  named plaintiff.  Plaintiff's claim is stated in the written Complaint, a copy of which is

20  served upon you with this Summons.

21      In order to defend against this lawsuit, you must respond to the Complaint by stating

22  your defense in writing, and by serving a copy upon the undersigned attorney for plaintiff

23  within twenty (20) days after the service of this Summons if served within the State of

24  Washington, and sixty (60) days if served outside the State of Washington, excluding the

25

 Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

SUMMONS - 1



day of service, or a default judgment may be entered against you without notice.  A default judgment is one where the plaintiff is entitled to what is asked for because you have not responded.  If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the Court.  If you do so, the demand must be in writing and must be served upon the undersigned attorney.   Within fourteen (14) days after you serve the demand, the plaintiff must file this lawsuit with the Court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this ⟨18⟩ day of August, 2011.

KENYON DISEND, PLLC



By _____
Shelley M. Kerslake
WSBA No. 21820
Attorneys for Plaintiff,
City of Tacoma

SUMMONS - 2

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

SUPERIOR COURT OF WASHINGTON FOR PIERCE COUNTY

| | |
|---|---|
| CITY OF TACOMA, a municipal corporation,<br><br><br>               Plaintiff,<br><br>     vs.<br><br>CLEAR CHANNEL OUTDOOR, INC., a Delaware corporation,<br><br>               Defendant. | NO. 11-2-12765-1<br><br>COMPLAINT FOR DECLARATORY JUDGMENT TO INVALIDATE SETTLEMENT AGREEMENT |

Plaintiff City of Tacoma ("hereinafter "City" or "Tacoma"), by and through its attorneys, Shelley M. Kerslake and Kenyon Disend, PLLC, brings this action against Defendant Clear Channel Outdoor, Inc. ("Clear Channel"), and alleges the following:

## I. NATURE OF ACTION

1.1  This is a declaratory judgment action seeking invalidation of a settlement agreement between the parties on the ground that it is unenforceable.

## II. PARTIES

2.1  Plaintiff City of Tacoma is a municipal corporation organized as a first-class charter city under the laws of the State of Washington.

2.2  Defendant Clear Channel is a Delaware corporation doing business in Pierce



Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

COMPLAINT FOR DECLARATORY JUDGMENT TO
INVALIDATE SETTLEMENT AGREEMENT - 1

County, Washington.

### III. JURISDICTION & VENUE

3.1 This Court has jurisdiction pursuant to the Uniform Declaratory Judgments Act ("UDJA"), RCW 7.24.010, and pursuant to RCW 2.08.010. The four elements to invoke the court's jurisdiction under the UDJA are met in this case: (1) there is an actual, present and existing dispute, (2) between parties having genuine and opposing interests, (3) which involves a direct and substantial interest, and (4) a judicial determination will finally and conclusively resolve the dispute.

3.2 Venue is proper in Pierce County pursuant to RCW 4.12.020 because the parties are located in Pierce County and the acts complained of occurred in Pierce County.

### IV. FACTUAL ALLEGATIONS

4.1 Clear Channel maintains signs within the Tacoma city limits and disseminates noncommercial and commercial speech on those signs.

4.2 In 1997, the City enacted Ordinance 26101, which required billboard owners to remove non-conforming signs by August 1, 2007.

4.3 In July of 2007, Clear Channel filed a lawsuit against the City in Pierce County Superior Court (Cause No. 07-2-10344-4) seeking declaratory and injunctive relief and alleging, among other things, that the City violated Clear Channel's First, Fifth and Fourteenth Amendment rights under the federal constitution, its parallel rights under Washington's constitution, and its statutory and common law rights.

4.4 In August of 2007, the City removed the case filed by Clear Channel to the United States District Court because Clear Channel asserted federal claims.



Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

COMPLAINT FOR DECLARATORY JUDGMENT TO
INVALIDATE SETTLEMENT AGREEMENT - 2

4.5   In an attempt to resolve the pending litigation between the parties, Clear Channel and the City discussed an amicable resolution.  These discussions surrounded a "cap and trade" program where digital billboards would be erected, and in exchange, a certain number of static billboards would be removed ("Digital Exchange Program"). This Digital Exchange Program would need to be embodied in the City's land use code. Changes to the City's land use code require an extensive public process and referral to the City's Planning Commission for review, public hearings, and a recommendation to the City Council.  It then requires a majority vote of the City Council.

4.6   Both Clear Channel representatives and City staff were aware and explicitly discussed that the City Council could not be contractually bound to take certain legislative action at a future date.

4.7   As a result of the parties' mutual understanding, it was agreed that any settlement agreement would be drafted as an offer of settlement, conditioned upon passage of an ordinance that allowed the contemplated Digital Exchange Program. The settlement agreement ("Agreement") is attached hereto as Exhibit A.  If the City adopted an ordinance that incorporated the terms of the Agreement, Clear Channel would then execute the Agreement, thereby settling the parties' dispute.  However, the City was under no obligation to enact an ordinance that allowed digital billboards.  In addition to the Agreement, the parties also contemplated execution of an "Agreement Re[garding] [sic] Dismissal of Lawsuit" (hereinafter "Dismissal Agreement").   The Dismissal Agreement is Exhibit 4 to the Agreement filed herewith as Exhibit A.  The Dismissal Agreement provides that "[u]pon execution of the attached Settlement Agreement by the City, the parties shall file a Stipulated Dismissal of the lawsuit." Ex. A, at Ex. 4, p. 1, ¶

COMPLAINT FOR DECLARATORY JUDGMENT TO
INVALIDATE SETTLEMENT AGREEMENT - 3

KENYON
DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

1.

4.8  The Tacoma City Council approved the Agreement by motion at its July 27, 2010 meeting, and City officials shortly thereafter signed the Agreement.  The Agreement called for a new code to be adopted by the City within six (6) months of the date the City approved the Agreement (the "6 Month Option Period").  Ex. A, at p. 3, ¶ 6. As the end of the 6 Month Option Period approached, it was clear that the City's work on a new code was not complete; thus, an amendment was executed, allowing for additional time.  This "First Amendment to Settlement Agreement between City of Tacoma and Clear Channel" (hereinafter "First Amendment") is attached hereto as Exhibit B.  Prior to the extension period, Clear Channel had not executed the Agreement, because the City had not yet adopted an ordinance allowing the Digital Exchange Program that the Agreement contemplated as a condition precedent.  Moreover, in the almost 6 months following the First Amendment, Clear Channel still had not executed the Agreement, again because the City had not yet adopted an ordinance to allow the Digital Exchange Program that the Agreement contemplated as a condition precedent.

4.9  During the term of the Agreement the City continued to work diligently to draft a new billboard ordinance/code related to billboard regulation to facilitate the Digital Exchange Program.  The matter was sent to the Planning Commission.  City staff developed a proposed code which incorporated the terms of the Agreement.  This draft code was reviewed by the Planning Commission.  The draft code was then sent out for public comment.  The public comment received by the City, in response to the draft code, was overwhelmingly negative.  It became abundantly clear that many citizens in Tacoma did not want digital billboards in the City.

KENYON DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

4.10   After much deliberation, the Planning Commission recommended to the City Council that it not adopt a code which allowed digital billboards, but instead adopt minor modifications to the existing regulations and pursue removal of non-conforming billboards in the future.

4.11   The City Council carefully considered the matter.   The Council took additional public input.  City staff continued to meet with Clear Channel representatives surrounding this issue.

4.12   On June 14, 2011, Mayor Marilyn Strickland declared that the terms of the Agreement could not be implemented.

4.13   On July 26, 2011, the Council considered Substitute Ordinance 28009 which modified provisions of the sign code, but did not allow digital billboards.  It was slated for adoption on August 9, 2011.  This substitute ordinance appeared, at that meeting, to have the support of the majority of the Council.

4.14   It was not until after the meeting on July 26, 2011 that Clear Channel executed the Agreement in an attempt to force the City Council to act in accordance with the terms of the Agreement.

4.15   The Tacoma City Council adopted Substitute Ordinance 28009 on August 9, 2011, a copy of which is attached hereto as Exhibit C.

4.16   Clear Channel asserts that the terms of the Agreement are binding.

4.17   Clear Channel's rights under the Agreement are contingent upon the City enacting a new billboard ordinance consistent with the terms of the Agreement. The City has not enacted such an ordinance.   Therefore, the City disputes the validity of the Agreement. The question regarding whether the City is bound by the Agreement is a real

KENYON DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

and existing controversy.

## V.  CLAIM ONE – LACK OF CONSIDERATION

5.1  The City realleges each preceding paragraph as if fully set forth herein.

5.2  The Agreement provides that the City will compensate Clear Channel for the fair market value of its interest in billboard signs that are removed and relocation permits that are relinquished at some future date.  Ex. A, at pp. 2-3, ¶ 4.  There is no consideration for this provision, however, because the City failed to enact a billboard ordinance effectuating the terms of the Agreement.

5.3  All of the parties' obligations under the Agreement are contingent upon the City's enactment of a new billboard ordinance, which it failed to do despite its good faith efforts.  Because the City did not enact a billboard ordinance, all other contractual obligations arising under the Agreement cease to exist due to lack of consideration.

## VI.  CLAIM TWO – ILLUSORY CONTRACT

6.1  The City realleges each preceding paragraph as if fully set forth herein.

6.2  The City claims the Agreement is illusory and unenforceable.

6.3  The Agreement provides that the City will enact a billboard ordinance to allow Clear Channel to construct ten new digital billboard signs in exchange for removal of over 50 existing billboard signs in the City.  Ex. A, p. 2, ¶ 3.

6.4  The Agreement also provides that "[n]othing in this Agreement shall require the City to enact any ordinance."  Ex. A, p. 5, ¶ 14.  This provision gives the City complete discretion as to whether or not to enact any billboard ordinance.  Because the Agreement did not obligate the City to enact a billboard ordinance, the City's alleged promise to do so is illusory and, therefore, the Agreement is unenforceable.

COMPLAINT FOR DECLARATORY JUDGMENT TO
INVALIDATE SETTLEMENT AGREEMENT - 6

KENYON
DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

## VII.  CLAIM THREE – FAILURE OF CONDITION PRECEDENT

7.1  The City realleges each preceding paragraph as if fully set forth herein.

7.2  The Agreement provides an express condition precedent that the City must enact a new billboard ordinance before Clear Channel will be allowed to construct ten new digital billboard signs in exchange for removal of over 50 existing billboard signs in the City.  Ex. A, p. 2, ¶ 3.

7.3  Although the Tacoma City Council made a good faith effort to enact a new billboard ordinance, its efforts have not been successful to date.  Thus, the City has not fulfilled a valid condition precedent.

7.4  Because the City has not fulfilled the valid condition precedent, Clear Channel is not entitled to specific performance or damages and the Agreement is unenforceable.

## VIII.  CLAIM FOUR – REPUDIATION OF OFFER

8.1  The City realleges each preceding paragraph as if fully set forth herein.

8.2  The Agreement provides: "Clear Channel's option to execute this Agreement, or to leave the Agreement unexecuted, shall be within Clear Channel's sole discretion. Nothing herein shall be interpreted to require Clear Channel to execute the Agreement." Ex. A, p. 4, ¶ 7.

8.3  After it became apparent that the Tacoma City Council's good faith efforts to enact a new billboard ordinance would not succeed and before Clear Channel executed the Agreement, the Mayor of Tacoma, Marilyn Strickland, announced during the June 14, 2011 open public meeting of the Tacoma City Council that the Agreement between the City and Clear Channel could not be implemented.  Thus, the City effectively withdrew

COMPLAINT FOR DECLARATORY JUDGMENT TO
INVALIDATE SETTLEMENT AGREEMENT - 7

KENYON DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

its offer prior to Clear Channel's execution of the Agreement.

8.4   Clear Channel now seeks to take advantage of the terms of the Agreement after it had been revoked by the City following the City's good faith, albeit unsuccessful, efforts to enact a new billboard ordinance.

IX.   CLAIM FIVE – INVALID EXECUTION BY CLEAR CHANNEL

9.1   The City realleges each preceding paragraph as if fully set forth herein.

9.2   The Agreement provides that "[t]his Agreement shall become effective on the date on which the Agreement is fully executed by Clear Channel, the City Manager, the City Clerk/Deputy City Clerk and their signatures properly attested ("Effective Date"). Ex. A, at p. 1, ¶ 1. The person who executed the Agreement on behalf of Clear Channel is identified as its Vice President, not the President, and the person's signature was not attested to as required by Paragraph 1 of the Agreement.

9.3   It is not clear that the person who executed the Agreement on behalf of Clear Channel had legal authority to bind Clear Channel. Also, the signature of the person who executed the Agreement on behalf of Clear Channel was not properly attested to as required by Paragraph 1 of the Agreement. Due to these material defects, the Agreement is invalid and unenforceable.

X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff City of Tacoma prays that this Court:

10.1   Enter a declaratory judgment for the City and against Clear Channel finding that the Agreement violates state law and is therefore unenforceable;

10.2   Award the City its costs and attorney's fees to the extent allowable by law; and

COMPLAINT FOR DECLARATORY JUDGMENT TO
INVALIDATE SETTLEMENT AGREEMENT - 8

KENYON
DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

10.3  Grant such further relief as the Court deems just and proper.

DATED this ___18___ day of August, 2011.

KENYON DISEND, PLLC

By _____ 
Shelley M. Kerslake
WSBA No. 21820
Attorneys for Plaintiff,
City of Tacoma

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

COMPLAINT FOR DECLARATORY JUDGMENT TO
INVALIDATE SETTLEMENT AGREEMENT - 9

KENYON DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

# EXHIBIT A

## SETTLEMENT AGREEMENT

## BETWEEN CITY OF TACOMA AND CLEAR CHANNEL

### RECITALS

1.     Clear Channel and the City are parties to a lawsuit, Clear Channel v. City of Tacoma, United States District Court, Western District of Washington, No. C07-5407 BHS.

2.     The City is contemplating the enactment of an ordinance (the "Ordinance") which, among other things, would allow digital bulletin billboard signs in exchange for the removal of existing billboard signs and/or the relinquishment of pending relocation permits. The effect of such an ordinance would be to significantly and permanently reduce the number of billboard structures in the City.

3.     The City believes that the Ordinance, in conjunction with the provisions of this Agreement, will benefit the public health, safety, and welfare of the City by providing for a significant and permanent reduction in the number of billboards in the City, greater, faster (almost instaritaneous) and more effective dissemination of "amber alert"  . messages, and enabling the use of new and greener materials and technology in sign structures.

4.     As a result of the Ordinance, the City anticipates there will be over 30,000 square feet of billboard signage removed within the first year of passage of the ordinance. Thereafter, there will be significant additional reductions over time because of the digital conversion ratio, which requires elimination of several thousand square feet of existing signage and/or permits in exchange for each new digital billboard, reductions based on normal industry attrition and consolidation, and Clear Channel's commitment to remove additional signage over time.

### AGREEMENT

1.     Effective Date.  This Agreement shall become effective on the date on which the Agreement is fully executed by Clear Channel, the City Manager, the City Clerk/Deputy City Clerk and their signatures properly attested ("Effective Date").

**ORIGINAL**

2.    Following the Effective Date of this Agreement, and upon receipt of permits to construct ten digital bulletin billboards at the approximate locations shown on Ex. 1, Clear Channel agrees to (i) permanently remove the structures shown on Ex. 2 within six months of the receipt of the permits to construct ten digital billboards, and (ii) relinquish 100 relocation permits it currently holds, as shown on Ex. 3. The structures removed will be cut down at or below ground level. Thereafter, Clear Channel will be able to erect additional digital bulletin billboards as follows: For every one digital billboard to be constructed, Clear Channel will give up a combination of 15 relocation permits and existing faces, of which at least five must be removals of existing faces. If and when Clear Channel no longer has any relocation permits, it will have to remove eight existing faces in exchange for the right to construct one digital structure. Regardless of whether Clear Channel seeks permits to construct digital billboards in addition to the first ten referenced above, Clear Channel will permanently remove an additional 25 sign faces during the five-year period beginning upon the issuance of the digital bulletin billboard permits referenced above. The faces to be removed will be at Clear Channel's discretion. Clear Channel may include these 25 faces, as removed, in the number of faces to be removed in seeking to erect additional digital bulletin billboards.

3.    For purposes of this Agreement, digital billboard shall mean a billboard that uses digital technology that produces static images which are changed remotely. Digital billboards may not scroll, flash or feature motion pictures. Clear Channel is not permitted to construct the ten digital billboards referenced above until the removal of the billboards shown on Exhibit 2 is complete. All of the provisions of this paragraph are conditioned upon the enactment of an Ordinance, which will specify, among other things, digital receiving areas, static image times, billboard maintenance, PSA processes and technology definitions. Any digital billboards constructed will be constructed in compliance with such Ordinance and any other applicable provisions of the City Code.

4.    Vested Rights. Clear Channel and the City hereby acknowledge Clear Channel's vested rights with respect to its existing conforming and legally

2

**ORIGINAL**

nonconforming billboard signs and relocation permits, and any signs constructed pursuant to the Ordinance. If and to the extent the City requires the removal of such signs or elimination of such permits at some future date (other than in connection with the construction of digital billboards as provided herein), the City will compensate Clear Channel for the fair market value of those interests.

5. Additional Sign Regulation by City. Nothing herein shall be construed to limit or impair the City's authority to enact ordinances or regulations governing signs or to limit or impair the City's police power, provided, however, that, if the City does so in a manner that limits, conflicts with or is inconsistent with Clear Channel's vested rights as acknowledged in this Agreement, it shall pay to Clear Channel any monetary loss arising therefrom, including the fair market value for removed signs or elimination of relocation permits as a result of such ordinances or regulations. In addition, notwithstanding anything to the contrary herein, if the City amends its existing sign regulations to allow for the use of new technology or material, or to in any way change the existing limitations on signs, Clear Channel may also use such technology and material and/or elect to be otherwise governed by the changes in connection with its signs without otherwise changing any of the terms this Agreement.

6. Option Period. Upon approval of this Agreement and its execution by the Mayor, the City Clerk/Deputy City Clerk and proper attestation of their signatures, the City shall deliver the original signed Agreement to Clear Channel (the "Approval Date"). By executing this Agreement, the City, in exchange for Clear Channel's dismissal of the Litigation pursuant to the Agreement Re Dismissal of Lawsuit, and the payment by Clear Channel to the City of $100.00, and other good and valuable consideration, grants Clear Channel the option, in Clear Channel's sole discretion, of executing this Agreement at any time within six (6) months of the Approval Date (the "6 Month Option Period"). If, however, the City adopts an Ordinance within the 6 Month Option Period, then Clear Channel shall only have the option, in its sole discretion, of executing the Agreement at any time within thirty (30) days from the effective date of the Ordinance, shortening or extending the 6 Month Option Period, as the case may be (the "30 Day Option Period").

**ORIGINAL**

7.      Clear Channel's option to execute this Agreement, or to leave the Agreement unexecuted, shall be within Clear Channel's sole discretion.  Nothing herein shall be interpreted to require Clear Channel to execute the Agreement.

8.      The provisions of this Agreement including, without limitation, the removal time frames in Paragraph 2, shall not become effective until Clear Channel executes this Agreement.

9.      Entire Agreement.  This Agreement, and the Agreement Re Dismissal of Lawsuit attached as Ex. A, is the entire agreement between the City and Clear Channel, and no verbal or written assurance or promise by any party hereto is effective or binding unless included in this Agreement, or a written supplemental settlement agreement signed by the parties to this Agreement.

10.     Binding Effect.  This Agreement shall be binding upon and inure to the benefit of the City and Clear Channel, its subsidiaries, affiliates, designated successors and assigns.  In the event of any challenge to this Agreement, the City and Clear Channel agree that they will defend the approval, validity, constitutionality, and enforceability of this Agreement and any of the terms contained herein.

11.     Enforcement.  In the event of a breach of this Agreement, any party hereto may bring an action for injunctive relief, specific performance, or other appropriate relief to compel enforcement of this Agreement.

12.     Severability.  If any paragraph, phrase, sentence or portion of this Agreement is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision and such holding shall not affect the validity of the remaining portions hereof.

13.     Counterparts.  This Agreement may be executed in counterparts, all of which together shall constitute one and the same instrument.

14.     Notice.  Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a

4

**ORIGINAL**

recognized overnight delivery service, facsimile communication, electronic communication (e-mail) or by other means which affords the sender evidence of delivery, or of rejected delivery, to the respective parties at the addresses shown below, unless and until a different address has been designated by written notice to the other party.  Any notice by means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| If to the City: | City Attorney<br>City of Tacoma<br>747 Market Street, #1120<br>Tacoma, WA  98402 | If to Clear Channel: |
| --- | --- | --- |
| With copy to: | City Clerk<br>City of Tacoma<br>747 Market Street, #220<br>Tacoma, WA  98402 | With copy to: |

Notice shall be deemed to have been given upon receipt or refusal.

[Signatures appear on the following page.]

14.   Nothing in this Agreement shall require the City to enact any ordinance.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their undersigned officials as duly authorized.

CITY OF TACOMA

City Manager

Date:   7-30-2010

ATTEST:

8-6-10

City Clerk/Deputy City Clerk

ORIGINAL

5

APPROVED:

Tacoma City Attorney

CLEAR CHANNEL OUTDOOR, INC.

By: BRYAN PARKER
Its: EXECUTIVE VICE PRESIDENT
Date: 7-27-11

**ORIGINAL**

State of Arizona          )
                                )   SS
County of Maricopa   )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Bryan Parker, personally known to me to be the Executive Vice President of Clear Channel Outdoor, Inc., a Delaware corporation, and the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she signed, sealed and delivered the said instrument in his/her said capacity and as his/her free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this 27th day of July, 2011.



Notary Public

My Commission Expires _____ 11 - 1 ____, 20 12.

Rebecca A. Knollhuff
Commission #14083
Notary Public - Arizona
Maricopa County
My Commission Expires
November 1, 2012

Exhibit 1



Proposed Approximate Locations for First 10 Digital Billboards

**ORIGINAL**

## Exhibit 2 - Billboards to be removed

| Parcel | Real Property Address | SC - Description | Lease |
|--------|----------------------|------------------|-------|
| 40215 | 2810 Marine View Dr 98422 | MARINE VIEW DR WL 150F N/O MCMURRAY RD SF-1 | 14187 |
| 40216 | 2810 Marine View Dr 98422 | MARINE VIEW DR WL 150F N/O MCMURRAY RD NF-2 | 14187 |
| 40891 | 3535 E McKinley Ave #37-39 98404 | MCKINLEY AV EL 100F N/O MORTON ST NF-1 | 9087 |
| 40892 | 3535 E McKinley Ave #37-39 98404 | MCKINLEY AV EL 100F N/O MORTON ST SF-2 | 9067 |
| 40948 | 858 S 38th St 9841B | 38TH ST S SL 100F W/O THOMPSON AV EF-1 | 14149 |
| 40949 | 858 S 38th St 9841B | 38TH ST S SL 100F W/O THOMPSON AV WF-2 | 14149 |
| 40975 | 614 S 38th St 98408 | S 38TH ST SL 230F W/O TACOMA AV EF-1 | 37743 |
| 40976 | 614 S 38th St 98408 | S 38TH ST SL 230F W/O TACOMA AV WF-2 | 37743 |
| 41072 | 5039 Pacific Ave 98408 | PACIFIC AV EL 50F N/O S 52ND ST NF-1 | 14069 |
| 41073 | 5039 Pacific Ave 98408 | PACIFIC AV EL 50F N/O S 52ND ST SF-2 | 14069 |
| 41286 | 6212 McKinley Ave 98404 | MCKINLEY AV WL 70F N/O E 63RD ST NF-2 | 40261 |
| 41287 | 6212 McKinley Ave 98404 | MCKINLEY AV WL 70F N/O E 63RD ST SF-1 | 40261 |
| 41290 | 6302 McKinley Av 98421 | MCKINLEY AV WL 200F N/O 64TH ST E NF-2 | 14020 |
| 41291 | 6302 McKinley Av 98421 | MCKINLEY AV WL 200F N/O 64TH ST E SF-1 | 14020 |
| 41371 | 8040 Pacific Ave 98408 | PACIFIC AV WL 93F N/O S 82ND ST NF-2 | 12263 |
| 41495 | 8805 Pacific Ave 98444 | PACIFIC AV EL 10F S/O S 88TH ST NF-1 | 40158 |
| 41496 | 8805 Pacific Ave 98444 | PACIFIC AV EL 10F S/O S 88TH ST SF-2 | 40158 |
| 43761 | 7017 S Tacoma Way 98409 | S TACOMA WY EL 345F S/O S 70TH ST NF-1 | 11484 |

**ORIGINAL**

| | | | |
|---|---|---|---|
| 43762 | 7017 S Tacoma Way 98409 | S TACOMA WY EL 345F S/O S 70TH ST SF-2 | 11484 |
| 44012 | 5425 S Tyler st 98409 | S TYLER ST EL 525F N/O S 56TH ST NF-1 | 12399 |
| 44033 | 5321 S Tyler St 98409 | S TYLER ST EL 470F S/O S 52ND ST NF-1 | 12399 |
| 44034 | 5321 S Tyler St 98409 | S TYLER ST EL 470F S/O S 52ND ST SF-2 | 12399 |
| 44054 | 5225 S Tyler St 98409 | S TYLER ST EL 150F S/O S 52ND ST NF-1 | 12399 |
| 44055 | 5225 S Tyler St 98409 | S TYLER ST EL 150F S/O S 52ND ST SF-2 | 12399 |
| 44219 | 3004 South Tacoma Way 98409 | S TACOMA WY SL 50F W/O JUNETT EF-1 | 40056 |
| 44220 | 3004 South Tacoma Way 98409 | S TACOMA WY SL 50F W/O JUNETT WF-2 | 40056 |
| 44720 | 3859 Center St 98409 | CENTER ST NL 10F W/O DURANGO ST WF-1 | 40157 |
| 44721 | 3859 Center St 98409 | CENTER ST NL 10F W/O DURANGO ST EF-2 | 40157 |
| 44930 | 5032 No Pearl St 98407 | PEARL ST WL 200F S/O N 51ST ST SF-1 | 40060 |
| 44931 | 5032 No Pearl St 98407 | PEARL ST WL 200F S/O N 51ST ST NF-2 | 40060 |
| 44972 | 3809 No 26th St 98407 | N 26TH ST EL 15F N/O PROCTOR ST NWF-1 | 9141 |
| 44973 | 3809 No 26th St 98407 | N 26TH ST EL 15F N/O PROCTOR ST EF-1 | 9141 |
| 44993 | 3817 N 26th St 98406 | N 26TH ST NL 100F E/O PROCTOR ST WF-1 | 9141 |
| 45013 | 3809 No 26th St 98407 | N 26TH ST NL 100F W/O ADAMS ST EF-1 | 9141 |
| 45040 | 6517 6th Ave 98406 | 6TH AV NL 100F W/O MASON ST EF-2 | 14139 |
| 45135 | 3111 6th Ave 98406 | 6TH AV NL 50F E/O ALDER ST WF-1 | 40062 |
| 45136 | 3111 6th Ave 98406 | 6th AV NL 50F E/O ALDER ST WF-2 | 40062 |
| 45240 | 2040 6th Ave 98403 | 6TH AV SL 304F E/O STATE ST WF-2 | 9873 |
| 45303 | 1407 So 6th Ave 98405 | 6TH AV NL 100F W/O SHERIDAN AV WF-1 | 9609 |
| 45323 | 1318 6th Ave 98405 | 6TH AV SL 95F E/O SHERIDAN AV EF-1 | 12441 |

**ORIGINAL**

| | | | |
|---|---|---|---|
| 45471 | 919 S 11th St<br>98405 | S "J" ST EL 10F N/O S 11TH ST NF-1 | 40274 |
| 45472 | 919 S 11th St<br>98405 | S 11TH ST NL 10F E/O S "J" ST EF-2 | 40274 |
| 45492 | 1001-1 So 11th St<br>98405 | S 11TH ST NL 20F W/O S "J" ST EF-1 | 12869 |
| 45540 | 2002 S 12th St<br>98405 | SPRAGUE AV WL 10F S/O S 12TH ST<br>WF-3 | 14097 |
| 45544 | 1240 Sprague St<br>98405 | SPRAGUE AV WL 175F S/O 12TH ST<br>NF-2 | 14098 |
| 45545 | 1240 Sprague St<br>98405 | SPRAGUE AV WL 175F S/O 12TH ST<br>SF-1 | 14098 |
| 45574 | 1212 Earnest S Brazil St<br>98405 | S 12TH ST SL 5F W/O S "L" ST WF-1 | 12934 |
| 45594 | 1115 S 12th St<br>98405 | S 12TH ST NL 100F E/O S "L" ST WF-1 | 12999 |
| 45600 | 1215 Martin Luther King Way<br>98405 | MLK ST EL 150F S/O 12TH ST NF-1 | 14009 |
| 45601 | 1215 Martin Luther King Way<br>98405 | MLK ST EL 150F S/O 12TH ST SF-2 | 14009 |
| 45614 | 1210 Tacoma Ave S<br>98402 | TACOMA AV WL 50F N/O S 13TH ST<br>NF-1 | 12436 |
| 45634 | 1302 Tacoma Ave<br>98402 | TACOMA AV WL 50F S/O S 13TH ST<br>SF-1 | 37797 |
| 45635 | 1302 Tacoma Ave<br>98402 | TACOMA AV WL 50F S/O S 13TH ST<br>NF-2 | 37797 |

| Total Number Of Signs To Be<br>Removed: 53 |
|---|

ORIGINAL

| 7/19/2010 | AK Media / Washington Tacoma Bank Posters and Bulletins | | EXHIBIT 3 |
|---|---|---|---|
| 1114 S. Proctor St. | | 1 | 1 |
| 1114 S. Proctor St. | | | 1 |
| 3907  S 12th  St. | | 1 | 1 |
| 3907  S 12th  St. | | | 1 |
| 3907  S 12th  St. | | | 1 |
| 3907  S 12th  St. | | | 1 |
| S TACOMA WAY SL 135FT E Wilkeson St | | 1 | 1 |
| S TACOMA WAY SL 135FT E Wilkeson St | | | 1 |
| S TACOMA WAY SL 5FT W ALASKA | | 1 | 1 |
| S TACOMA WAY SL 5FT W ALASKA | | | 1 |
| 6TH AV S 50F W UNION AV W | | | 1 |
| PORT OF TAC RD W 600F N PAC HWY E S | | 1 | 1 |
| PORT OF TAC RD W 600F N PAC HWY E N | | | 1 |
| S 15TH ST S 50F E TACOMA AV E | | 1 | 1 |
| TACOMA AV E 5F S S 15TH ST N | | 1 | 1 |
| TACOMA AV E 50F S S 15TH ST S | | 1 | 1 |
| STADIUM WY W 10F S DIVISION LN S | | 1 | 1 |
| STADIUM WY W 10F S DIVISION LN N | | | 1 |
| JEFFERSON AV W 100F N S 25TH ST N | | 1 | 1 |
| S 25TH ST N 50F W JEFFERSON AV W | | 1 | 1 |
| S 25TH ST N 50F W JEFFERSON AV E | | | 1 |
| PACIFIC AV  W 10F N JEFFERSON AV N | | 1 | 1 |
| PORTLAND AV W 75F S E 26TH ST N | | | 1 |
| PORTLAND AV W 10F S E 26TH ST S | | 1 | 1 |
| 6TH AV S 32F E FAWCETT AV E | | 1 | 1 |
| 6TH AV S 32F E FAWCETT AV W | | | 1 |
| PACIFIC AV W 100F S S 45TH ST S | | 1 | 1 |
| PACIFIC AV W 100F S S 45TH ST N | | | 1 |
| PACIFIC AV W 60F N S 50TH ST S | | 1 | 1 |
| PACIFIC AV W 60F N S 50TH ST N | | | 1 |
| PORTLAND AV W 75F S E 25TH ST N | | 1 | 1 |
| S 56TH ST N 50F W S L ST W | | 1 | 1 |
| S 56TH ST N 50F W S L ST E | | | 1 |
| MARTIN LUTHER KING ST W 75F S S 15TH ST N | | 1 | 1 |
| STADIUM WY W 600F N S 4TH ST S | | | 1 |
| STADIUM WY W 600F N S 4TH ST S | | | 1 |
| 3014  Portland Av | | 1 | 1 |
| 3014  Portland Av | | | 1 |
| 2330  E 11th St | | 1 | 1 |
| 2330  E 11th St | | | 1 |
| 5520  Pacific Av | | 1 | 1 |
| 5520  Pacific Av | | | 1 |
| 1101  Taylor Way | | 1 | 1 |
| 1101  Taylor Way | | | 1 |
| 6611 S Tacoma Way | | 1 | 1 |
| 6234 S Tacoma way | | 1 | 1 |
| 6234 S Tacoma Way | | | 1 |
| 1424  Puyallup Av | | 1 | |

Prepared by Ackerley Outdoor Advertising Governmental Affairs Department

ORIGINAL

1

7/19/2010       AK Media / Washington Tacoma Bank       **EXHIBIT 3**

Posters and Bulletins

| Address | | |
|---|---|---|
| 1424  Puyallup Av | | 1 |
| 4207  S Pine St. | 1 | 1 |
| 4207  S Pine St | | 1 |
| 2914  6th Av | 1 | 1 |
| 8403(05) Pacific Av | 1 | 1 |
| 8403(05) Pacific Av | | 1 |
| 6231 1/2 S Tac. Wy | 1 | 1 |
| 6231 1/2 S Tac. Wy | | 1 |
| 4718  S Tacoma Way | 1 | 1 |
| 3804  Portland Av | 1 | 1 |
| 858  S  38th St | 1 | 1 |
| 2615  6th Av | 1 | 1 |
| 4301  6th Av | 1 | 1 |
| 4301  6th Av | | 1 |
| 3420  McKinley Av | 1 | 1 |
| 6613  S Tacoma Way | 1 | 1 |
| Center St e/o Alder | 1 | 1 |
| Center St e/o Alder | | 1 |
| Center St w/o Cedar | 1 | 1 |
| Center St w/o Cedar | | 1 |
| 314  E 26th St | 1 | 1 |
| 516  "K" St | 1 | 1 |
| 3417  6th Av | 1 | 1 |
| 3417  6th Av | | 1 |
| 7601  S Tacoma Way | 1 | 1 |
| 7601  S Tacoma Way | | 1 |
| 3512  E  11 th St | 1 | 1 |
| 3512  E  11th St | | 1 |
| 3532  E  11th St | 1 | 1 |
| 35342 E  11th St | | 1 |
| 2124  S Tacoma Way | 1 | 1 |
| 2124  S Tacoma Way | | 1 |
| 7821  S Tacoma Way | 1 | 1 |
| 7821  S Tacoma Way | | 1 |
| 4345  S Tacoma Way | 1 | 1 |
| 4321  S Tacoma Way | 1 | 1 |
| 4321  S Tacoma way | | 1 |
| 4545  S Tacoma Way | 1 | 1 |
| 4525  S Tacoma Way | 1 | 1 |
| 4525  S Tacoma Way | | 1 |
| 4517  S Tacoma Way | 1 | 1 |
| 4517  S Tacoma Way | | 1 |
| 3011  S  Hosmer | 1 | 1 |
| 3011  S  Hosmer | | 1 |
| 4002  S  56th St | 1 | 1 |
| 3211 S  38th St | 1 | 1 |
| 3211 S  38th St | | 1 |
| 2403  S Tacoma Wy | 1 | |

| 7/19/2010 | AK Media / Washington Tacoma Bank Posters and Bulletins | | EXHIBIT 3 |
|---|---|---|---|
| 1801  Center St | 1 | 1 | |
| 2607  Pacific Av | 1 | 1 | |
| 2607  Pacific Av | | 1 | |
| 3601  Pacific Av | 1 | 1 | |

Prepared by Ackerley Outdoor Advertising Governmental Affairs Department     **ORIGINAL**     3.

EXHIBIT 4

## AGREEMENT RE DISMISSAL OF LAWSUIT

1.      Upon execution of the attached Settlement Agreement by the City, the parties shall file a Stipulated Dismissal of the lawsuit.  If the City thereafter attempts to enforce the provisions of TMC 13.06.520N(6) ("Amortization"), as that provision exists as of the date that the City signs the Settlement Agreement, and Clear Channel files a lawsuit challenging such action, any such lawsuit shall be deemed to have been filed on the date the lawsuit was originally filed for purposes of the statute of limitations and laches.

2.      The City agrees that it will continue to comply with and be bound by the terms of the Stipulated Injunction in the pending case during the period from when it signs the Settlement Agreement to a date three weeks after the expiration of the applicable Option Period.  If Clear Channel refiles the lawsuit during that period, the terms of the Stipulated Injunction shall continue in effect until the conclusion of the lawsuit, including all appeals.

3.      The City agrees to notify Clear Channel in the event of a third-party challenge to all or any portion of the Settlement Agreement or any Ordinance adopted in connection with the Settlement Agreement.  If such challenge is made, Clear Channel may, at its sole discretion, elect to toll the Sign removal requirements in Paragraph 2 of the Settlement Agreement until the conclusion of the lawsuit, including all appeals, by giving written notice of such election to the City within 30 days of service of such challenge upon Clear Channel.

4.      In the event the Settlement Agreement or any resulting Ordinance is wholly or partially invalidated by a final non-appealable court order issued as a result of a third-party challenge, and the City thereafter attempts to enforce TMC 13.06.520N(6) as it now exists, then Clear Channel shall have the option, at its sole discretion, to refile the lawsuit under the terms of Paragraph 1 above.

**ORIGINAL**

5.      Should the City fail to comply with all or any portion of the Settlement Agreement, Clear Channel shall have the right to refile the lawsuit pursuant to the terms of Paragraph 1 above, in addition to the remedies set forth in the Settlement Agreement.

DATED this _____ day of March, 2010.


_____                    _____
Clear Channel                                Mayor of Tacoma


                                             _____
                                             Tacoma City Attorney


**ORIGINAL**

RECYCLED PAPER MADE FROM 20% POST CONSUMER CONTENT

AVERY™

## FIRST AMENDMENT TO SETTLEMENT AGREEMENT
## BETWEEN CITY OF TACOMA AND CLEAR CHANNEL

Clear Channel and the City of Tacoma were parties to a lawsuit, Clear Channel v. City of Tacoma, United States District Court, Western District of Washington, No. C-07-5407 BHS. Pursuant to that lawsuit, the City executed a Settlement Agreement. Although Clear Channel has not yet executed the Settlement Agreement, it has an option period in which it may do so, as set forth in Paragraph 6 of the Settlement Agreement.

Clear Channel and the City of Tacoma agree that the Option Period in Paragraph 6 of the Settlement Agreement is amended such that the final date by which Clear Channel may execute the Settlement Agreement is extended to August 15, 2011. This new date is also applicable to the provisions of Paragraph 2 of the parties' Agreement Re Dismissal of Lawsuit.

CLEAR CHANNEL OUTDOOR

By _____
    Olivia Lippens,
President & General Manager, Seattle Division

CITY OF TACOMA

_____
Tacoma City Manager

_____
Tacoma City Clerk

_____
Tacoma City Attorney

## FIRST AMENDMENT TO SETTLEMENT AGREEMENT
## BETWEEN CITY OF TACOMA AND CLEAR CHANNEL

Clear Channel and the City of Tacoma were parties to a lawsuit, Clear Channel v. City of Tacoma, United States District Court, Western District of Washington, No. C-07-5407 BHS. Pursuant to that lawsuit, the City executed a Settlement Agreement. Although Clear Channel has not yet executed the Settlement Agreement, it has an option period in which it may do so, as set forth in Paragraph 6 of the Settlement Agreement.

Clear Channel and the City of Tacoma agree that the Option Period in Paragraph 6 of the Settlement Agreement is amended such that the final date by which Clear Channel may execute the Settlement Agreement is extended to August 15, 2011. This new date is also applicable to the provisions of Paragraph 2 of the parties' Agreement Re Dismissal of Lawsuit.

CLEAR CHANNEL OUTDOOR

By_____
   Olivia Lippens,
President & General Manager, Seattle Division

CITY OF TACOMA
_____
Tacoma City Manager

_____ 1-25-11
Tacoma City Clerk

_____
Tacoma City Attorney

AVERY™   RECYCLED PAPER MADE FRO   20% POST CONSUMER CONTENT

Req. #12994

## SUBSTITUTE
# ORDINANCE NO. 28009

AN ORDINANCE relating to the Sign Code; amending Chapter 13.06 of the
Tacoma Municipal Code relating to digital billboards.

WHEREAS the proposed amendments to Chapter 13.06 of the Tacoma

Municipal Code ("TMC") will prohibit digital billboards, modify certain definitions,

and amend other provisions relating to static billboards, and

WHEREAS, at the direction of the City Council, the Planning

Commission ("Commission") began its review of the City's regulations regarding

billboards in December 2010, and

WHEREAS a public information meeting was held on January 31, 2011,

and

WHEREAS a draft of potential code changes was released for public

review on February 16, 2011, and

WHEREAS a public hearing was held on March 16, 2011, and

WHEREAS, based upon its review of the subject, as well as public input,

the Commission made a formal recommendation, accompanied by a Findings

and Recommendations Report detailing the Commission's decision, to the City

Council on May 18, 2011, and

WHEREAS the recommended amendments address several sections of

the zoning code, Sections 13.06.520, 13.06.521, and 13.06.700, including, but

not limited to: (1) definitions will be amended as follows: (a) the term

"billboard" is defined in relation to size and location, rather than content, (b) the

term for "off-premises sign" has been revised to pertain to location, rather than

commercial content, and (c) the definition of "sign" has been slightly revised to

-1-

Ord12994sub-FINAL.doc-SK/tok

089



adopt a widely-accepted definition; (2) new billboards are listed as prohibited

signs in many areas of the City; (3) the restriction on billboards has been

clarified to list digital billboards as prohibited entirely; (4) language related to the

Highway Beautification Act and Scenic Vistas Act has been strengthened to

reflect that additional regulations beyond the TMC apply to billboards;

(5) language regarding billboards has been updated to refer to "faces" rather

than "faces and structures"; (6) additional requirements for aesthetics and

landscaping for standard billboards have been included; (7) the section

regarding dispersal (how far apart billboards must be from each other) has

been simplified; and (8) the section regarding removal of nonconforming

billboards when a site or building is modified has been changed significantly,

including, but not limited to: (a) thresholds for removal have been aligned with

other sections of the regulatory code which address nonconforming sites and

structures, and (b) the requirement for a concomitant agreement has been

deleted, and

     WHEREAS, in 1997, the City passed Ordinance No. 26101, which

included a ten year amortization period for the removal of non-conforming

billboards, and

     WHEREAS the City desires to add an additional period of time to the

1997 amortization period of ten years to ensure that an adequate opportunity to

amortize the value of the billboard is achieved, and

-2-

090

Ord12994sub-FINAL.doc-SK/tok

EG 004 (11/89)



WHEREAS the City believes that fourteen and a half year amortization period is more than reasonable and is supported by both state and federal decisional law, and

WHEREAS Ordinance No. 26101 contained a provision for banking billboard relocation permits, and

WHEREAS 169 permits have been banked and many have been inactive for over ten years, and

WHEREAS the City desires to provide for an expiration for inactive relocation permits to provide certainty and finality in the permitting process; Now, Therefore,

BE IT ORDAINED BY THE CITY OF TACOMA:

Section 1.  That Chapter 13.06 of the Tacoma Municipal Code is hereby amended, as set forth in the attached Exhibit "A."

Section 2.  Severability.  If any section, subsection, paragraph, sentence, clause or phrase of this ordinance or its application to any person or situation should be held to be invalid or unconstitutional for any reason by a court of competent jurisdiction, such invalidity or unconstitutionality shall not affect the

Ord12994sub-FINAL.doc-SK/tok

-3-

091

LEG 004 (11/89)



validity or constitutionality of the remaining portions of this ordinance or its

application to any other person or situation.

Passed    AUG – 9 2011

_____
Mayor

Attest:

_____
City Clerk (ACTING)

Approved as to Form;

_____
City Attorney

Ord12994sub-FINAL.doc-SK/tok

-4-

091

EC 094 (11/89)

Substitute Ord 12994
Exhibit A

BILLBOARD CODE REVISIONS
_____

Proposed Amendments to the Land Use Regulatory Code – Chapter 13.06

These proposed amendments include modifications to the following Sections of *TMC* Title 13, the Land Use Regulatory Code:

**Chapter 13.06 - Zoning**

**13.06.520 – Signs**

**13.06.521 – General Sign Regulations**

**13.06.700 – Definitions and Illustrations**

---

*Note – These amendments show all of the changes to the *existing* land use regulations. The sections included are only those portions of the code that are associated with these amendments. New text is underlined and text that is deleted is shown in strikethrough. In addition, as this exhibit is associated with a substitute ordinance, the provisions specifically modified by this substitute are further highlighted.

---

**13.06.520   Signs.**

A.  Purpose.  The purpose of this section is to establish sign regulations that support and complement land use objectives set forth in the Comprehensive Plan, including those established by the Highway Advertising Control Act (Scenic Vistas Act).  Signs perform important communicative functions.  The reasonable display of signs is necessary as a public service and to the proper conduct of competitive commerce and industry.  The sign standards contained herein recognize the need to protect the safety and welfare of the public and the need to maintain an attractive appearance in the community.  This code regulates and authorizes the use of signs visible from public rights-of-way, with the following objectives:

1.  To establish uniform and balanced requirements for new signs;

2.  To ensure compatibility with the character of the surrounding area;

3.  To promote optimum conditions for meeting sign users' needs while, at the same time, improving the visual appearance of an area which will assist in creating a more attractive environment;

4.  To achieve quality design, construction, and maintenance of signs so as to prevent them from becoming a potential nuisance or hazard to pedestrian and vehicular traffic.

B.  Scope.

1.  The provisions and requirements of this section shall apply to signs in all zones as set forth in this chapter.  Applicable sign regulations shall be determined by reference to the regulations for the zone in which the sign is to be erected.

2.  The regulations of this section shall regulate and control the type, size, location, and number of signs.  No sign shall hereafter be erected or used for any purpose or in any manner, except as permitted by the regulations of this section.

3.  The provisions of this code are specifically not for the purpose of regulating the following:  traffic and directional signs installed by a governmental entity; signs not readable from a public right-of-way or adjacent property; merchandise displays; point of purchase advertising displays, such as product

093

dispensers; national flags, flags of a political subdivision, and symbolic flags of an institution or business; legal notices required by law; historic site plaques; gravestones; structures intended for a separate use, such as Goodwill containers and phone booths; scoreboards located on athletic fields; lettering painted on or magnetically flush-mounted onto a motor vehicle operating in the normal course of business; and barber poles.

4.  Regulations pertaining to signs in Shoreline Districts are found in Chapter 13.10.

* * *

### 13.06.521   General sign regulations.

A.  Administration.

1.  Land Use Administrator.  The Land Use Administrator shall interpret, administer, and enforce the sign code in accordance with Chapter 13.05.

2.  Building Official.  The Building Official shall issue all permits for the construction, alteration, and erection of signs in accordance with the provisions of this section and related chapters and titles of the Tacoma Municipal Code (see Chapter 2.05).  In addition, all signs, where appropriate, shall conform to the current Washington State Energy Code (see Chapter 2.10), National Electrical Code, and the National Electrical Safety Code.  Exceptions to these regulations may be contained in the Tacoma Landmarks Special Review District regulations, Chapters 1.42 and 13.07.

3.  Applicability.  All new permanent signs, painted wall signs, and temporary off-premises advertising signs require permits.  Permits require full conformance with all City codes, particularly Titles 2 and 13.  Signs not visible from a public right-of-way or adjacent property are not regulated herein, but may require permits pursuant to the provision of Title 2.

4.  In addition to and notwithstanding the provisions of this section, all signs shall comply with all other applicable regulations and authorities, including, but not limited to, Chapter 47.42 RCW – *Highway Advertising Control Act – Scenic Vistas Act* and Chapter 468-66 WAC – *Highway Advertising Control Act.*

5.  Substitution Clause.  Any sign allowed under this Code may contain, in lieu of any other message or copy, any lawful noncommercial message or copy.

B.  Exempt signs.  The following signs shall be exempt from all requirements of this section and shall not require permits; however, this subsection is not to be construed as relieving the user of such signage from responsibility for its erection and maintenance, pursuant to Title 2 or any other law or ordinance relating to the same.

1.  Changing of the advertising copy or message on a sign specifically designed for the use of replaceable copy.

2.  Repainting, maintenance, and repair of existing signs or sign structures; provided, work is done on-site and no structural change is made.

3.  Signs not visible from the public right-of-way and beyond the boundaries of the lot or parcel.

4.  Incidental and warning signs.

5.  Sculptures, fountains, mosaics, murals, and other works of art that do not incorporate business identification or commercial messages.

6.  Signs installed and maintained on bus benches and/or shelters within City right-of-way, pursuant to a franchise authorized by the City Council.

7.  Seasonal decorations for display on private property.

8.  Memorial signs or tablets, names of buildings and date of erection, when cut into any masonry surface or when constructed of bronze or other incombustible material.

094

9. Signs of public service companies indicating danger and aid to service or safety.

10. Non-electric bulletin boards not exceeding 12 square feet in area for each public, charitable, or religious institution, when the same are located on the premises of said institutions.

11. Construction signs denoting a building which is under construction, structural alterations, or repair, which announce the character of the building enterprise or the purpose for which the building is intended, including names of architects, engineers, contractors, developers, financiers, and others; provided, the area of such sign shall not exceed 32 square feet.

12. Window sign.

13. Political signs, as set forth in Title 2.

14. Real estate signs, 12 square feet or less, located on the site. Condominiums or apartment complexes shall be permitted one real estate sign with up to 12 square feet per street frontage. Such sign(s) may be used as a directory sign that advertises more than one unit in the complex.

15. Off-premises open house or directional signs, subject to the following regulations:

a. The signs may be placed on private property or on the right-of-way adjacent to said private property, with the permission of the abutting property owner. The signs shall be displayed in such a manner as to not constitute a traffic hazard or impair or impede pedestrians, bicycles, or disabled persons. If either condition is not met, the abutting property owner or the City may remove the sign.

b. Signs shall not be fastened to any utility pole, street light, traffic control device, public structure, fence, tree, shrub, or regulatory municipal sign.

c. A maximum of three off-premises open house or directional signs will be permitted per single-family home. One additional open house or directional sign identifying the open house shall be permitted at the house being sold.

d. Signage shall not exceed four square feet in area per side (eight square feet total) and three feet in height. Off-premises open house or directional signs shall not be decorated with balloons, ribbons, or other decorative devices.

e. Signage shall only be in place between the hours of 11:00 a.m. and 6:00 p.m., when the seller of the product, or the seller's agent, is physically present at the location of the product.

f. Each off-premises open house or directional sign that is placed or posted shall bear the name and address of the person placing or posting the sign in print not smaller than 12 point font. The information identifying the name and address of the person placing or posting the sign is not required to be included within the content of the speakers' message, but may be placed on the underside of the sign or in any other such location.

g. New plats may have up to a maximum of eight plat directional signs for all new homes within the subdivision. New plat directional signs shall identify the plat and may provide directional information but shall not identify individual real estate brokers or agents. New plat directional signs shall be limited in size and manner of display to that allowed for off-premises open house or directional signs. Off-premises open house or directional signs shall not be permitted for new homes within new plats.

h. A maximum of three off-premises open house or directional signs shall be allowed per condominium or apartment complex.

16. Professional name plates two square feet or less.

17. Changing plex-style faces in existing cabinets; provided, work is done on-site without removing sign.

C. Prohibited signs. The following commercial signs are prohibited, except as may be otherwise provided by this chapter:

1. Signs or sign structures which, by coloring, wording, lighting, location, or design, resemble or conflict with a traffic control sign or device, or which make use of words, phrases, symbols, or characters in such

**095**

a manner as to interfere with, mislead, or confuse persons traveling on the right-of-way or which, in any way, create a traffic hazard as determined by the City Engineer or his or her designee.

2. Signs which create a safety hazard by obstructing the clear view of pedestrians or vehicular traffic, or which obstruct a clear view of official signs or signals as determined by the City Engineer or his or her designee.

3. Signs, temporary or otherwise, which are affixed to a tree, rock, fence, lamppost, or bench; however, construction, directional, and incidental signs may be affixed to a fence or lamppost.

4. Any sign attached to a utility pole, excluding official signs as determined by Tacoma Public Utilities.

5. Signs on public property, except when authorized by the appropriate public agency.

6. Signs attached to or placed on any stationary vehicle or trailer so as to be visible from a public right-of-way for the purpose of providing advertisement of services or products or for the purpose of directing people to a business. This provision shall not apply to the identification of a firm or its principal products on operable vehicles operating in the normal course of business. Public transit buses and licensed taxis are exempt from this restriction.

7. Roof signs, except where incorporated into a building to provide an overall finished appearance.

8. All portable signs not securely attached to the ground or a building, including readerboards and A-frames on trailers, except those allowed by the regulations of the appropriate zoning district.

9. Abandoned or dilapidated signs.

10. Portable readerboard signs.

11. Inflatable signs and blimps.

12. Digital Billboards

1213. Off-premises signs, except pursuant to Section 13.06.521.L.

D. Special regulations by type of sign. In addition to the general requirements for all signs contained in this section, and the specific requirements for signs in each zone, there are special requirements for the following types of signs:

1. Wall signs.

2. Projecting signs.

3. Freestanding signs.

4. Marquee signs.

5. Under-marquee signs.

6. Canopy and awning signs.

7. Temporary signs.

8. Off-premises directional signs.

9. Billboards (outdoor advertising sign).

The special requirements for these signs are contained in subsections E through M of this section.

\* \* \*

L. Off-premises directional signs. Special regulations governing off-premises directional signs are as follows:

1. Off-premises directional signs shall be limited to a maximum of 15 square feet in area and 6 feet in height.

096

2. Off-premises directional signs shall contain only the name of the principal use and directions to the use in permanent lettering.

3. Off-premises directional signs shall be placed on or over private property, except that business district identification signs may be located and comply with the applicable requirements of Title 9.

4. Off-premises directional signs are permitted when on-premises signs are inadequate to identify the location of a business. If applicable, only one such sign shall be allowed.

M. Billboards (outdoor advertising signs). Special regulations governing billboards are as follows:

1. a. New billboard faces. Any new billboard must be installed in compliance with this chapter. In no case shall the number of billboard faces, associated structures, and total square footage of billboards as defined by this code exceed that in existence on August 1, 2011. This number shall include billboard faces for which relocation permits are held. Further, this number shall be reduced on March 1, 2012, by the number and square footage of nonconforming billboard faces in existence upon passage of this code. Any person, firm, or corporation who maintains billboard structures and faces within the City of Tacoma shall be authorized to maintain only that number of billboard structures and faces that they maintained on April 12, 1988, except for transfers permitted in subsection 1.e of this section. A person who maintains any such billboard structures and faces may, thereafter, relocate a billboard face or structure to a new location as otherwise authorized by this section. No other billboards shall be authorized, and there shall be no greater total number of billboard structures and faces within the City than the number that were in existence on April 12, 1988. That number of structures and faces shall include those for which permit applications had been filed prior to April 13, 1988. As unincorporated areas are annexed to the City of Tacoma, the total number of billboard structures and faces in that area will constitute an addition to the number authorized in the City of Tacoma.

b. Upon removal of an existing billboard face or structure, a relocation permit shall be issued authorizing relocation of the face to a new site. There shall be no time limit on the billboard owner's eligibility to utilize such relocation permits. In the event that a billboard owner wishes to remove a billboard and does not have immediate plans for replacement at a new location, an inactive relocation permit shall be issued. There shall be no time limit on the activation of the inactive permit and such permits are transferable. The application for a relocation permit shall include an accurate site plan and vicinity map of the billboard face or structure to be removed, as well as a site plan and vicinity map for the new location. Site plans and vicinity maps shall include sufficient information to determine compliance with the regulations of this chapter. The above provisions shall not apply to billboards whose permit applications were applied for prior to April 13, 1988, and not erected, unless the applicants or owners agree within 60 days to have such billboards, subject to all the provisions of this chapter.

eb. Expiration of relocation permits. Relocation permits issued pursuant to TMC 13.06.521.M prior to its amendment on September 1, 2011, related to the removal of nonconforming billboards, shall expire on September 1, 2012 or within 6 months of issuance, whichever is later. Relocation permits shall be transferable upon the billboard owner's written permission.

dc. Demolition. Removal of all faces from a billboard structure shall also require the issuance of a demolition permit for the structure itself and removal of billboard faces (and their associated structures, if necessary) shall be completed prior to the construction of new or relocated billboard faces. Structures removed shall be removed to grade and the grade restored at the site. In no case shall the number of billboard faces or structures increase, and the square footage of billboard sign area to be relocated shall be equal to or less than the square footage of billboard sign area to be removed. Removal of a billboard structure shall also require the issuance of a demolition permit, and removal of billboard faces and structures shall be completed prior to the installation of relocated billboard faces or structures. The billboard owner shall have the right to accumulate the amount of square footage to be allowed, at the owner's discretion, to new sign faces and structures permitted under this chapter.

097

2.  Maintenance. All billboards, including paint and structural members, shall be maintained in good repair and in compliance with all applicable building code requirements. Billboards shall be kept clean and free of debris. The exposed area of backs of billboards must be covered to present an attractive and finished appearance. Failure to maintain the billboard or its structure, including exterior painting, shall constitute a violation of this section and be subject to strict enforcement under the Land Use Code Enforcement procedures and penalties (Section 13.05.100), which may include removal by the City at the expense of the property owner, sign owner, or permitee.

3.  Design standards. The following design standards apply to all billboards.

a.  Each sign structure must, at all times, include a facing of proper dimensions to conceal back bracing and framework of structural members and/or any electrical equipment.  During periods of repair, alteration, or copy change, such facing may be removed for a maximum period of 48 consecutive hours.

b.  No more than two billboard faces shall be located on a single structure.

c.  Billboard faces located on the same structure shall be positioned back-to-back (i.e., their backs shall be parallel to each other) and within five (5) degrees of perpendicular to the roadway from which they are to be viewed.

d. Billboard faces must be in line with the support structure and no cantilevered design will be approved (see diagram below).



098

e. The billboard face or structure must be located within ten (10) feet of the property line which fronts the roadway from which the billboard is to be viewed.

f. No billboard can be located in such a way so that any portion of the sign face or structure is above a building.

g. No billboard may be constructed on a site where there is a freestanding sign.

4.  Landscaping. The following standards apply to all billboards installed after August 1, 2011.

a.  No code-required landscaping may be diminished for the installation of a billboard.

b.  When the base of the billboard support is visible from the adjacent sidewalk and/or street the support shall be surrounded with a 5-foot-wide landscaping buffer composed of shrubs and groundcover not to exceed 36-inches in mature height.

c.  Any alteration to any street tree (removal or pruning) is subject to City review and approval.

4~~5~~.  Dispersal. Billboard faces not located on the same structure shall be a minimum of 500 feet apart, including billboards which may be located outside the City limits.

~~a.  Not more than a total of four billboard faces attached to not more than two support structures shall be permitted on both sides of a street within any distance of 1,000 feet measured laterally along the right-of-way, with a minimum of 100 feet between such structures.~~

~~b.  There shall be at least 300 linear feet of land, which is properly zoned, which permits billboards on one side of the street in order to erect one billboard structure on that side of the street.  There shall be at least 600 linear feet of land, which is properly zoned, which permits billboards on one side of the street in order to erect more than one billboard structure on that side of the street.~~

~~c.  The property on the opposite side of the street from the proposed billboard location must also be properly zoned to permit billboards.~~

5~~6~~.  Size. The maximum area of any one sign shall be 300 square feet, with a maximum vertical sign face dimension of 12.~~5~~ feet and maximum length of 25 feet, inclusive of any border and trim, but excluding the base or apron, supports, and other structural members; provided, cut-outs and extensions may add up to 20 percent of additional sign area.

6~~7~~.  Lighting.

a.  No internally illuminated billboards are allowed.

b.  All lighting must be shielded to maintain light on the subject property.

c.  Lighting shall be directed toward the billboard and utilize cutoff shields or other means to prevent glare and spillover onto adjacent properties or skyward.

d.  No flashing billboards shall be permitted.

e.  Signs shall not imitate or resemble traffic control devices.

~~6.  Indirect or internal lighting shall be the only allowable means of illumination.  No flashing signs shall be permitted.~~

7~~8~~.  Buffering- Sensitive uses/areas. No billboard shall be located on, in, or within ~~250~~ 500 feet of the following, whether within or outside the Tacoma City Limits:

a.  A residential district;

b.  A mixed-use district (X-district);

099

b̶c̲. Any publicly-owned open space, playground, park, or recreational property, as recognized in the adopted Open Space Habitat and Recreation Element, "R̶e̶c̶r̶e̶a̶t̶i̶o̶n̶ ̶a̶n̶d̶ ̶O̶p̶e̶n̶ ̶S̶p̶a̶c̶e̶ ̶F̶a̶c̶i̶l̶i̶t̶i̶e̶s̶ ̶P̶l̶a̶n̶," as amended;

d̶e̲. Any c̶h̶u̶r̶c̶h̶ religious institution or primary or secondary school; or

e̶d̲. Any designated historic or conservation district, whether on the federal, state, or local register of historic properties.

f̲.8̶.̶ ̶N̶o̶ ̶b̶i̶l̶l̶b̶o̶a̶r̶d̶ ̶s̶h̶a̶l̶l̶ ̶b̶e̶ ̶l̶o̶c̶a̶t̶e̶d̶ ̶o̶n̶,̶ ̶i̶n̶,̶ ̶o̶r̶ ̶w̶i̶t̶h̶i̶n̶ ̶3̶7̶5̶ ̶f̶e̶e̶t̶ ̶o̶f̶ ̶a̶Any shoreline district.

9̶.̶ ̶ ̶R̶o̶o̶f̶t̶o̶p̶ ̶(̶b̶i̶l̶l̶b̶o̶a̶r̶d̶)̶ ̶s̶i̶g̶n̶s̶ ̶a̶r̶e̶ ̶p̶r̶o̶h̶i̶b̶i̶t̶e̶d̶.̶

1̶0̲9̶. The maximum height of all billboard signs shall be 30 feet, except in the PMI District, where the maximum height shall be 45 feet. For the purpose of this section, height shall be the distance to the top of the normal display face from the main traveled way of the road from which the sign is to be viewed (see diagram below).



**Measuring Maximum
Billboard Height**

1̶1̲0̶. Location – Billboards shall only be allowed in the C-2, M-1, M-2, and PMI zoning districts.

B̶i̶l̶l̶b̶o̶a̶r̶d̶ ̶s̶i̶g̶n̶s̶ ̶w̶h̶i̶c̶h̶ ̶a̶d̶v̶e̶r̶t̶i̶s̶e̶ ̶a̶ ̶b̶u̶s̶i̶n̶e̶s̶s̶,̶ ̶e̶v̶e̶n̶t̶,̶ ̶o̶r̶ ̶p̶e̶r̶s̶o̶n̶ ̶l̶o̶c̶a̶t̶e̶d̶ ̶o̶n̶ ̶t̶h̶e̶ ̶s̶a̶m̶e̶ ̶p̶r̶e̶m̶i̶s̶e̶s̶ ̶a̶s̶ ̶t̶h̶e̶ ̶b̶i̶l̶l̶b̶o̶a̶r̶d̶ ̶s̶i̶g̶n̶ ̶s̶h̶a̶l̶l̶ ̶b̶e̶ ̶c̶o̶n̶s̶i̶d̶e̶r̶e̶d̶ ̶a̶n̶ ̶o̶n̶-̶p̶r̶e̶m̶i̶s̶e̶s̶ ̶s̶i̶g̶n̶ ̶a̶n̶d̶ ̶m̶u̶s̶t̶ ̶m̶e̶e̶t̶ ̶a̶l̶l̶ ̶c̶r̶i̶t̶e̶r̶i̶a̶ ̶f̶o̶r̶ ̶t̶h̶e̶ ̶l̶o̶c̶a̶t̶i̶o̶n̶ ̶o̶f̶ ̶o̶n̶-̶p̶r̶e̶m̶i̶s̶e̶s̶ ̶s̶i̶g̶n̶s̶.̶

N. Nonconforming signs. It is the intent of this subsection to allow the continued existence of legal nonconforming signs, subject, however, to the following restrictions:

1. No sign that had previously been erected in violation of any City Code shall, by virtue of the adoption of this section, become a legal nonconforming sign.

2. No nonconforming sign shall be changed, expanded, or altered in any manner which would increase the degree of its nonconformity, or be structurally altered to prolong its useful life, or be moved, in whole or in part, to any other location where it would remain nonconforming. However, a legal nonconforming on-premises sign may be altered if the degree of nonconformity for height and sign area is decreased by

100

25 percent or greater. For purposes of this subsection, normal maintenance and repair, including painting, cleaning, or replacing damaged parts of a sign, shall not be considered a structural alteration.

3. Any sign which is discontinued for a period of 90 consecutive days, regardless of any intent to resume or not to abandon such use, shall be presumed to be abandoned and shall not, thereafter, be reestablished, except in full compliance with this chapter. Any period of such discontinuance caused by government actions, strikes, material shortages, acts of God, and without any contributing fault by the sign user, shall not be considered in calculating the length of discontinuance for purposes of this section.

4. Any nonconforming sign damaged or destroyed, by any means, to the extent of one-half of its replacement cost new shall be terminated and shall not be restored.

5. All existing billboards within the City which are not in compliance with the requirements of this section on ~~July 22, 1997~~ September 1, 2011, are considered to be nonconforming billboards. In addition to the provisions of TMC 13.06.521 N.6, nNonconforming billboards shall be made to conform with the requirements of this section under the following circumstances:

a. When any substantial alteration is proposed on a premises upon which is located a nonconforming billboard, the billboard shall be removed or brought into conformance with this section. For purposes of this provision, "substantial alteration" means all alterations within a two-year period whose cumulative value exceeds 200% of the value of the existing development or structure, as determined by the applicable Building Code, excluding purchase costs of the property and/or structure. ~~When any new sign for which a sign permit is required by this section is proposed to be installed on a premises upon which is located a nonconforming billboard, the billboard shall be removed or brought into conformance with this section for each new sign installed for a particular business.~~

b. Whenever a building, or portion thereof, to which a nonconforming billboard is attached (such as upon the roof or attached to a wall), is proposed to be expanded and/or remodeled, all nonconforming billboards shall be removed or brought into compliance with this section if the value of the alterations within any two-year period is greater than or equal to 50 percent of the value of the existing building, as determined by the Building Code, excluding purchase costs of the property and/or structure. ~~Whenever a building, or portion thereof, upon which is located a nonconforming rooftop (billboard) sign is proposed to be expanded or remodeled, all nonconforming rooftop billboard signs located on that portion of the building being remodeled or expanded shall be removed or brought into compliance with this section if such expansion or remodel adds to the building the lesser of:~~

~~(1) Twenty percent or more of the floor area of the existing building;~~

~~(2) One thousand square feet floor area; and~~

~~(3) A value for the new construction or remodeling greater than or equal to 50 percent of the assessed value of the existing building.~~

~~c. Whenever any modification is to be made to the structure, frame, or support of any nonconforming billboard sign, such nonconforming billboard sign shall be removed or brought into conformance with this section.~~

~~d. Whenever the facade of a building upon which is located a nonconforming billboard wall sign is remodeled or renovated, all nonconforming billboard wall signs located on the portion of the facade being renovated shall be brought into conformance with this section.~~

6. ~~The provisions of subsection 5 shall control, except in those instances where an applicant or owner can demonstrate that there exists a binding contract to allow a billboard sign that contains financial penalty provisions for early termination or the absence of termination provisions in the contracts with billboard companies. In those instances, a permit may be issued on the condition that when the contract for the billboard expires, or an option for renewal occurs, the billboard will then be removed, pursuant to subsection 5 above.~~

101

a. To insure compliance with this section, the property owner shall enter into an agreement with the City that identifies the termination date of the contract to allow the billboard and a provision that, if the billboard is not removed, the sign permit issued pursuant to this section will be revoked and the sign will be removed, pursuant to subsection e below.

b. This provision shall only apply to contracts entered into prior to the adoption of these regulations (July 22, 1997).

c. Any business owner or property owner seeking to obtain a sign permit for a property that has a nonconforming billboard located on it, and can demonstrate that there are either penalty provisions or the absence of termination provisions in the contracts with billboard companies in the City, shall apply for approval in accordance with the following procedures:

(1) Application. Prior to installation of a sign, the property owner shall apply for a sign permit with Building and Land Use Services. A complete application shall include a properly completed application form, structural plans, and fees, as prescribed in subsection c.(2) below.

(2) Fees. An applicant shall pay a fee for the inspection, notification, recording, and enforcement related to the continuation of nonconforming billboards, pursuant to Section 2.09.080, and is in addition to any other required fees.

(3) Concomitant agreement. Prior to the approval of the sign permit, the property owner shall execute a concomitant agreement with the City. Such agreement shall be in a form as specified by Building and Land Use Services, and approved by the City Attorney, and shall include, at a minimum: (a) the legal description of the property which has been permitted for the sign permit; and (b) the conditions necessary to apply the restrictions and limitations contained in this section. The concomitant agreement will be recorded prior to issuance of a sign permit by Building and Land Use Services. The concomitant agreement shall run with the land until the nonconforming billboard is removed from the property. The property owner may, at any time, apply to Building and Land Use Services for a termination of the concomitant agreement. Such termination shall be granted, upon proof that the business sign no longer exists on the property or upon proof that the nonconforming billboard no longer exists on the property.

(4) Permit issuance. Upon receipt of a complete application, application fees, completed concomitant agreement, and upon approval of the structural plans, a sign permit shall be approved.

(5) Violations. A violation of this section regarding provision of ownership shall be governed by Section 13.05.100.

(6) Amortization. All legal nonconforming billboard signs shall be discontinued and removed or made conforming within ten years from the effective date of this section, on or before August 1, 2007 March 1, 2012, and all billboards signs, which are made nonconforming by a subsequent amendment to this section, shall be discontinued and removed or made conforming within ten years after the date of such amendment (collectively the "amortization period"). Upon the expiration of the amortization period, the billboard sign shall be brought into conformance with this section, with a permit obtained, or be removed. Failure to remove a nonconforming billboard by the above date will result in enforcement action being taken pursuant to TMC 13.05.100. Nonconforming billboard signs that are removed prior to the end of the amortization period shall be given an inactive relocation permit, pursuant to subsection M.1.b. of this section.

O. Sign variances. Refer to Section 13.06.645.B.5.

P. Section 2. Severability. If any section, subsection, paragraph, sentence, clause or phrase of this Chapter or its application to any person or situation should be held to be invalid or unconstitutional for any reason by a court of competent jurisdiction such invalidity or unconstitutionality shall not affect the validity or constitutionality of the remaining portions of this Chapter ordinance or its application to any other person or situation.

102

(Ord. 27912 Ex. A; passed Aug. 10, 2010: Ord. 27893 Ex. A; passed Jun. 15, 2010: Ord. 27813 Ex. D; passed Jun. 30, 2009: Ord. 27562 Exhibit A; passed Dec. 12, 2006: Ord. 27245 § 15; passed Jun. 22, 2004: Ord. 27079 § 39; passed Apr. 29, 2003: Ord. 26933 § 1; passed Mar. 5, 2002)

### 13.06.700   Definitions and illustrations.

\* \* \*

Billboard, standard.  An off-premises sign greater than 72 square feet in size. This type of sign is generally composed of materials (panels or modules) mounted on a building wall or freestanding structure, or painted directly on the wall or freestanding structure.

Billboard, digital.  An off-premises sign greater than 72 square feet in size, utilizing digital message technology capable of changing the message or copy on the sign electronically. Digital billboards are not considered under the definitions of animated sign, changing message centers, electrical signs, illuminated signs, or flashing signs.

\* \* \*

Sign.  Any materials placed or constructed, or light projected, that (a) convey a message or image, and (b) are used to inform or attract the attention of the public, but not including any lawful display of merchandise. Some examples of "signs" include placards, A-boards, posters, murals, diagrams, banners, flags, billboards, or projected slides, images or holograms. The applicability of the term "sign" does not depend on the content of the message or image conveyed.

\* \* \*

Sign, billboard.  See 13.06.700.B, above.

\* \* \*

Sign, off-premises.  A permanent sign not located on the premises of the use or activity to which the sign pertains.

\* \* \*

Sign, on-premises.  Any sign identifying or advertising a business, person, activity, goods, products, or services primarily located on the premises where the sign is installed or maintained. A permanent sign located on the premises of the use or activity to which the sign pertains.

103

CITY CLERK USE ONLY

**REQUEST FOR**
☒ **ORDINANCE** ☐ **RESOLUTION** ~~RECEIVED~~

Request #: 12994
Ord./Res. #: 28009

1. DATE: June 30, 2011

JUL -1 2011

CITY CLERK'S OFFICE

| 2. SPONSORED BY: COUNCIL MEMBER(S) N/A | | |
|---|---|---|
| 3a. REQUESTING DEPARTMENT/DIVISION/PROGRAM Community & Economic Development/BLUS | 4a. CONTACT (for questions): Shirley Schultz | PHONE: 253-591-5121 |
| 3b. "DO PASS" FROM EDC/EPW joint meetings ☐ Yes ☐ No ☒ To Committee as information only ☐ Did not go before a Committee | 4b. Person Presenting: Shirley Schultz | PHONE: 253-591-5121 |
| 3c. DID THIS ITEM GO BEFORE THE PUBLIC UTILITY BOARD? ☐ Yes, on ☒ Not required | 4c. ATTORNEY: Shelley Kerslake | PHONE: 425-392-7090 |
| Department Director/Utility Division | N/A Budget Officer/Finance Director | City Manager/Director Utilities |

5. REQUESTED COUNCIL DATE: July 26, 2011

Preparation of an ordinance is requested for the City Council Meeting on Tuesday, July 26, 2011, following a public hearing to be held on July 19, 2011 regarding changes to the Tacoma Municipal Code regarding billboards. This project has been widely publicized and this date has been included on numerous schedules as the tentative date for first reading.

6. SUMMARY AGENDA TITLE: (A concise sentence, as it will appear on the Council agenda.)

Amending the Sign Code, Chapter 13.06.520 and 13.06.521, to prohibit digital billboards, modify certain definitions, and amending other provisions relating to static billboards.

7. BACKGROUND INFORMATION/GENERAL DISCUSSION: (Why is this request necessary? Are there legal requirements? What are the viable alternatives? Who has been involved in the process?)

At the direction of the City Council, the Planning Commission began its review of the City's regulations regarding billboards in December, 2010. A public information meeting was held January 31, 2011. A public review draft of potential code changes was released for public review on February 16, 2011 and a public hearing was held on March 16, 2011. Based upon their review of the subject, as well as public input, the Planning Commission made a formal recommendation to the City Council on May 18, 2011. The recommendation was accompanied by a Findings and Recommendations Report detailing the Planning Commission's decision.

The recommended amendments address several sections of Tacoma Municipal Code (TMC) 13.06.520 and 13.06.521, as follows:

1. Definitions. The term "billboard" is defined in relation to size and location, rather than content. The term for "off-premises sign" has been revised to pertain to location rather than commercial content, and the definition of "sign" has been slightly revised to adopt a widely-accepted definition.
2. New billboards are listed as prohibited signs except that existing nonconforming signs in certain circumstances may be relocated; the restriction on billboards has been clarified to list digital billboards as prohibited entirely.

104

**REQUEST (CONT)**

CITY CLERK USE ONLY

Request #:   12994

Ord/Res #:   28009

3. Language related to the Highway Beautification Act and Scenic Vistas Act has been strengthened to reflect that additional regulations beyond the Tacoma Municipal Code apply to billboards.
4. Language regarding billboards has been "cleaned up" to refer to faces rather than faces and structures.
5. Additional requirements for aesthetics and landscaping for standard billboards have been included.
6. The section regarding dispersal (how far apart billboards must be from each other) has been simplified.
7. The section regarding removal of nonconforming billboards when a site or building is modified has been changed significantly. Thresholds for removal have been aligned with other sections of the regulatory code which address nonconforming sites and structures. The requirement for a concomitant agreement has been deleted.

8. **LIST ALL MATERIAL AVAILABLE AS BACKUP INFORMATION FOR THE REQUEST AND INDICATE WHERE FILED:**

| Source Documents/Backup Material | Location of Document |
|---|---|
| Planning Commission Recommendation Letter | CEDD |
| Planning Commission Findings and Recommendation, June 1, 2011 | CEDD |
| Recommended Code Amendments | CEDD |
| Public Testimony Vols. I and II | CEDD |
| Comment & Response Report | CEDD |
| Public Review Booklet for Planning Commission hearing (2/16/11) | CEDD |
| | All of these documents are also available on the Planning Division website (www.cityoftacoma.org/planning > click on "Billboard Regulations") |

9. **WHICH OF THE CITY'S STRATEGIC GOALS DOES THIS ITEM SUPPORT? (CHECK THE GOAL THAT BEST APPLIES)**

   A. ☒ A SAFE, CLEAN AND ATTRACTIVE COMMUNITY

   B. ☐ A DIVERSE, PRODUCTIVE AND SUSTAINABLE ECONOMY

   C. ☐ A HIGH-PERFORMING, OPEN AND ENGAGED GOVERNMENT

105

**REQUEST (CONT)**

| | CITY CLERK USE ONLY |
|---|---|
| Request #: | 12994 |
| Ord/Res #: | 28009 |

10. IF THIS CONTRACT IS FOR AN AMOUNT OF $200,000 OR LESS, EXPLAIN WHY IT NEEDS LEGISLATIVE APPROVAL:

11. **FINANCIAL IMPACT:**   ☐ **EXPENDITURE**   ☐ **REVENUE**

        A. ☒ **NO IMPACT (NO FISCAL NOTE)**

        B. ☐ **YES, OVER $100,000, Fiscal Note Attached**

        C. ☐ **YES, UNDER $100,000, (NO FISCAL NOTE)**
                    **Provide funding source information below:**

**FUNDING SOURCE:  (Enter amount of funding from each source)**
**Fund Number & Name:**   **State $**   **City $**   **Other $**   **Total Amount**

**If an expenditure, is it budgeted?**   ☐ **Yes**   ☐ **No**   **Where? Cost Center:**
                                                **Acct #:**

**106**

| CITY CLERK USE ONLY | |
|---|---|
| Request #: | |
| Ord/Res #: | |



**City of Tacoma**                                                                              **Memorandum**

**TO:**        Rey Arellano, Interim City Manager

**FROM:**      Ryan Petty, Director, Community and Economic Development Department

**SUBJECT:**   Substitute Ordinance No. 28009 on City Council agenda August 9, 2011
               regarding the Billboard Regulations

**DATE:**      August 2, 2011

Substitute Ordinance No. 28009, which is set for second reading on August 9, would amend the
sign code to explicitly prohibit digital billboards, modify certain definitions, and amend other
provisions relating to static billboards. Staff provides the following additional information and
summary of the changes that would be enacted by this ordinance.

**Prior Council Actions**

The Planning Commission made a formal recommendation regarding the sign code to the City
Council on May 18, 2011. A Findings and Recommendations Report detailing the Planning
Commission's review process and decision accompanied the recommendation, and an
ordinance to adopt the recommendation was prepared. At first reading of that ordinance, on
July 26, 2011, a Substitute Ordinance was introduced by Council members Boe and Campbell
and accepted by the Council. This substitute is generally consistent with the Planning
Commission recommendation, but includes additional language regarding aesthetics, code
enforcement, and amortization of both nonconforming billboards and relocation permits.

**Summary of Code Changes – Substitute Ordinance No. 28009 (Exhibit A)**

The Substitute Ordinance includes amendments to the Planning Commission's
recommendations for code changes, as forwarded to the City Council on May 18, 2011, and
which was the subject of the public hearing before the City Council on July 19, 2011.

The proposed changes to the existing *Tacoma Municipal Code* (TMC) contained in the
substitute ordinance are summarized below. They are listed by page number in Substitute
Exhibit A and each is identified as to whether it is from the original Planning Commission
Recommendation (noted as PC) or a proposed change that is new in the substitute (noted
as SE). Minor wording changes are not listed.

Page 2:
  1. TMC 13.06.521.A.4 has been added to strengthen the reference to other laws governing
     signs. (PC)
  2. TMC 13.06.521.A.5 has been added by the recommendation of the City Attorney to
     confirm that signs are not regulated based upon their commercial or non-commercial
     message. (SE)

107

Memorandum to Rey Arellano, Interim City Manager
Substitute Ordinance No. 28009
August 2, 2011
Page 2

Page 4:

3. TMC 13.06.521.C.1 and 2 – The Traffic Engineer has clarified authority to deny sign permits based on safety. (PC)
4. TMC 13.06.521.C.12 – Digital billboards are expressly listed as prohibited signs. (PC)

Page 5:

5. TMC 13.06.521.M.1.a – The language regarding the cap on the number of billboards has been updated and simplified. The intent is to allow no additional billboards, as was adopted in the sign code in 1988 and again in 1997. (SE) *The Planning Commission had recommended only minimal changes to this section*
6. TMC 13.06.521.M.1 – The language regarding exchanging nonconforming billboards for relocation certificates has been removed in light of the proposed revised amortization schedule. (SE)
7. TMC 13.06.521.M.1.b – Relocation credits will have a clear expiration date beyond which they will not be usable for placement of a new billboard. (SE)
8. TMC 13.06.521.M.1.c – Demolition language is clarified. (PC)

Page 6:

9. TMC 13.06.521.M.2 – Maintenance language is strengthened (PC) and a reference is added to the code enforcement process. (SE)
10. TMC 13.06.521.M.3 – Design standards have been added for:
    - Number of faces on a structure. (PC)
    - Signs being parallel to each other. (PC)
    - Prohibiting cantilevered designs, with an illustration. (SE)
    - Requiring a maximum setback from the roadway. (SE)
    - Prohibiting overhanging or above-roof billboards. (SE)
    - Prohibiting a new billboard on a site with an existing freestanding sign. (SE)

Page 7:

11. TMC 13.06.521.M.4 – Landscaping provisions have been added. (PC)
12. TMC 13.06.521.M.5 – Dispersal standards have been simplified (PC) and include billboards outside the City. (SE)
13. TMC 13.06.521.M.7 – Add lighting standards to prohibit internal illumination and require shielding. (SE)
14. TMC 13.06.521.M.8 – Increase buffers to 500 feet from all sensitive uses/areas. (SE) *The Planning Commission had recommended 300 feet*

Page 8:

15. TMC 13.06.521.M.8 – Add Mixed-Use zones as a sensitive area. (PC)
16. TMC 13.06.521.M.8 – Clarify Language and titles for buffering. (PC)
17. TMC 13.06.521.M.8 – Add Conservation Districts to the list of sensitive areas. (PC)
18. TMC 13.06.521.M.10 – Billboards are restricted to C-2, M-1, M-2, and PMI Districts. (PC)

108

Memorandum to Rey Arellano, Interim City Manager
Substitute Ordinance No. 28009
August 2, 2011
Page 3

Pages 9-10:

19. TMC 13.06.521.N.5 – Regulations regarding when a nonconforming billboard must be removed have been changed significantly in order to align with thresholds elsewhere in the code. (PC)

20. TMC 13.06.521.N.6 – Extend the amortization period to March 1, 2012 for removal of nonconforming billboards, providing approximately 15 years from the first enactment of the amortization provision. (SE)

21. TMC 13.06.521.N.6 – Add provision to clarify that failure to remove nonconforming signs is subject to penalties and enforcement. (SE)

22. TMC 13.06.521.P – A severability clause has been added as recommended by the City Attorney so that if any part of the chapter is found to be invalid for any reason, that does not affect the validity of the rest of the chapter. (SE)

## Additional Information Regarding the Number of Billboards

Throughout the billboard discussion and study, it has been stated that there are approximately 253 existing billboard faces, approximately 193 of which are nonconforming to the existing code. An additional 169 relocation certificates are held by Clear Channel.

If these (or other) code changes are adopted, additional signs may become nonconforming. That number is unknown at this time and would depend on which additional performance standards (size, height, design, setback, buffering, etc.) are put into place. Buffering revisions proposed include changes to the distance and to the sensitive uses/areas that are to be buffered. A re-inventory and analysis of existing billboards would be needed to estimate the number of billboards that could be reclassified as non-conforming.

109

Ordinance No. _____ 28009 Substitute

First Reading of Ordinance: JUL 2 6 2011

Final Reading of Ordinance: _____ AUG - 9 2011

Passed: _____ AUG - 9 2011

**Roll Call Vote:**

| MEMBERS | AYES | NAYS | ABSTAIN | ABSENT |
|---|---|---|---|---|
| Mr. Boe | ✓ | | | |
| Mr. Campbell | ✓ | | | |
| Mr. Fey | ✓ | | | |
| Mr. Lonergan | | ✓ | | |
| Mr. Manthou | | | | ✓ |
| Mr. Mello | ✓ | | | |
| Ms. Walker | ✓ | | | |
| Ms. Woodards | ✓ | | | |
| Mayor Strickland | ✓ | | | |

| MEMBERS | AYES | NAYS | ABSTAIN | ABSENT |
|---|---|---|---|---|
| Mr. Boe | | | | |
| Mr. Campbell | | | | |
| Mr. Fey | | | | |
| Mr. Lonergan | | | | |
| Mr. Manthou | | | | |
| Mr. Mello | | | | |
| Ms. Walker | | | | |
| Ms. Woodards | | | | |
| Mayor Strickland | | | | |

# EXHIBIT 3

1

2

3

4

5

6

7                    SUPERIOR COURT OF WASHINGTON IN AND FOR PIERCE COUNTY

8    CITY OF TACOMA, a municipal corporation,   )
                                                )
9                              Plaintiff,        )      No. 11-2-12765-1
                                                )
10   v.                                          )      NOTICE OF APPEARANCE
                                                )
11   CLEAR CHANNEL OUTDOOR, INC., a             )
     Delaware corporation,                       )
12                                               )
                               Defendant.        )
13   _____)

14   TO:          CITY OF TACOMA, Plaintiff

15   AND TO:      Shelley M. Kerslake and Kenyon Disend, Its Attorney

16         PLEASE TAKE NOTICE that the appearance of defendant CLEAR CHANNEL

17   OUTDOOR, INC., is hereby entered in the above-entitled action through the undersigned

18   attorneys.  You are directed to serve all future pleadings or papers, except original process,

19   upon the following attorneys at the address indicated.

20
                  Paul R. Taylor
21                Steven C. Minson
                  Byrnes Keller Cromwell LLP
22                1000 Second Avenue, 38th Floor
                  Seattle, WA  98104
23                (206) 622-2000
                  Fax: (206) 622-2522
24                Email:  ptaylor@byrneskeller.com
                          sminson@byrneskeller.com
25

26

NOTICE OF APPEARANCE - 1

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1     DATED this 31st day of August, 2011.

2               BYRNES KELLER CROMWELL LLP

3

               By /s/ Paul R. Taylor_____

4                   Paul R. Taylor, WSBA #14851
                   Steven C. Minson, WSBA #30974

5               Attorneys for Defendant
               Clear Channel Outdoor, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF APPEARANCE - 2

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

## CERTIFICATE OF SERVICE

2     The undersigned attorney certifies that on the 31st day of August, 2011, a true copy of
the foregoing pleading was served upon the following individuals:

3

4     **VIA EMAIL & MAIL**

5     Shelley M. Kerslake
Kenyon Disend, PLLC

6     11 Front Street South
Issaquah, WA  98027-3820

7

8                                        /s/ Paul R. Taylor
                                         Paul R. Taylor
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF APPEARANCE - 3

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000