The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CITY OF TACOMA, a municipal corporation,<br><br>            Plaintiff,<br><br>     vs.<br><br>CLEAR CHANNEL OUTDOOR, INC., a Delaware corporation,<br><br>            Defendant. | NO.  3:11-cv-05747-BHS<br><br>DECLARATION OF SHELLEY M. KERSLAKE IN SUPPORT OF CITY OF TACOMA'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

I, Shelley M. Kerslake, declare and state as follows:

1.  I am over the age of eighteen years, competent to testify herein, and make this declaration on personal knowledge of the facts stated in support of the City of Tacoma's Opposition to Defendant's Motion to Dismiss.

2.  I began representing the City of Tacoma in litigation with Clear Channel Outdoor, Inc. ("Clear Channel") beginning in 2007.

3.  In 2007, Clear Channel brought suit against the City of Tacoma alleging that its sign code was unconstitutional.

4.  In 2010, the parties attempted to resolve the outstanding litigation.

5.  I had numerous conversations with counsel for Clear Channel surrounding the

DECLARATION OF SHELLEY M. KERSLAKE IN
SUPPORT OF CITY OF TACOMA'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
CV 11-05747-BHS - 1



Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

Proposed Settlement Agreement that is at issue in this case.

6. We had several discussions starting in March of 2010 regarding the deal points of a settlement. The deal points were as follows:

    a. Clear Channel would be able to put up digital billboards in exchange for the removal of static billboards ("Exchange Program"). This would give the City its desired outcome of fewer overall billboards in the City. When the Proposed Settlement Agreement was fully implemented, the City would only have a handful of digital billboards in the City and all static billboards would be removed;

    b. Implementation of the Exchange Program would require amendment of the City's code to allow for digital billboards and related performance standards;

    c. Clear Channel representatives and City staff negotiated the recommended locations for digital billboards, as well as identified those static billboards that would be removed under the first phase of the Exchange Program and the corresponding code amendments necessary for these deal points;

    d. The approximate billboard locations at issue needed to be specifically identified in the Proposed Settlement Agreement. The performance standards regarding height, brightness, and other specifications would be captured through the City's code amendment process; and

    e. The entire settlement hinged on the City adopting a code that suited the needs of Clear Channel; thus, there needed to be an "out" for Clear Channel if the City adopted a code that did not work for its business model.

7. At no time during the negotiation of these deal points was the issue of fair market value for billboards discussed.

DECLARATION OF SHELLEY M. KERSLAKE IN
SUPPORT OF CITY OF TACOMA'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
CV 11-05747-BHS - 2

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

8. It was understood between the parties that the City Council could not be contractually bound to pass legislation and, thus, the Proposed Settlement Agreement was drafted to account for this unique situation.

9. On or about March 15, 2010, I received a draft of the Proposed Settlement Agreement from Clear Channel.  In this draft was a provision for the payment of fair market value for billboards that the City required to be removed.  This was the first time this concept had appeared.

10. On March 16, 2010, I sent preliminary revisions to Clear Channel's counsel including modifications to the proposed fair market value provision, wherein I included a statement that amortization could be utilized as a form of payment for such removal.

11. Counsel for Clear Channel indicated to me that under no circumstance could Clear Channel agree to language that acquiesced to amortization as a form of compensation for a property interest.  On March 22, 2011, I had a phone conversation with counsel for Clear Channel to discuss his draft settlement agreement and the need for any provision regarding fair market value.  During that conversation it was conveyed that Clear Channel's concern was about its investment in digital billboards; specifically, Clear Channel was concerned that it could invest millions of dollars in several digital billboards, just to have a future City Council ban them and force their removal.  Clear Channel wanted to make sure that it had the opportunity to realize its investment in this very costly technology.  At no time was it discussed that this requested fair market value provision would be applied absent passage of a code allowing for digital billboards.

12. During this same conversation, Clear Channel's counsel reiterated that if the City did not pass a code that allowed digital billboards in the manner outlined in the

DECLARATION OF SHELLEY M. KERSLAKE IN
SUPPORT OF CITY OF TACOMA'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
CV 11-05747-BHS - 3

KENYON DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

Proposed Settlement Agreement, there would be no agreement and Clear Channel would reinstitute its lawsuit against the City.  At no time was fair market value reimbursement discussed as an "alternative" removal method "in lieu of" the City's passage of a digital billboard code.  In fact, Clear Channel specifically required that it have the ability retain its right to re-file its lawsuit against the City if such a code were not passed, thereby supporting its statements that the entire Proposed Settlement Agreement hinged on passage of a digital code.  *See* Agreement Re Dismissal (Dkt. No. 1 at 9-10).  The City was well aware that it had to pass a digital billboard code if it wanted to take advantage of dismissal of Clear Channel's prior lawsuit and the Exchange Program, and that failure to do so would engender further litigation.  Accordingly, the City attempted in good faith to adopt a digital billboard code over the course of nearly a year, albeit without success.

13. Following the City's unilateral execution of the Proposed Settlement Agreement, the City in good faith embarked on an extensive process to adopt digital billboard regulations.

14. The City's standard process for adoption of sign codes includes:  preparing draft code language; public outreach; presentation to the City's Planning Commission; public hearings; a formal recommendation to the City Council on the proposed code by the Planning Commission; public testimony before the City Council; review by the City Council (first reading of ordinance); and a final vote by the Council (usually the second reading of ordinance).

15. The City and Clear Channel worked diligently through the public process, attending public outreach meetings, drafting code provisions, and sharing information regarding performance standards.  The City kept Clear Channel updated on key dates for

DECLARATION OF SHELLEY M. KERSLAKE IN
SUPPORT OF CITY OF TACOMA'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
CV 11-05747-BHS - 4

KENYON DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

public input and decision making.

16. The Proposed Settlement Agreement had fixed January 30, 2011, as the date by which the City needed to adopt a new digital billboard code or face refiling of Clear Channel's lawsuit.

17. As that date drew near, it became apparent that the extensive process required by the City's Code for a sign code amendment would not accommodate a January 30, 2011 deadline; thus, I discussed with counsel for Clear Channel the unlikelihood of meeting the deadline and proposed a more realistic time frame. *See* attached Exhibit A, a true and correct copy of an e-mail dated January 14, 2011 to Paul Taylor from Shelley Kerslake.

18. On December 23, 2010, Clear Channel forwarded an Amendment to the Proposed Settlement Agreement to the City for execution. This Amendment was consistent with the City's understanding that enactment of a digital billboard code was a condition precedent to the formation of the Proposed Settlement Agreement. Clear Channel needed more time to see what the exact language of the digital billboard code would be, and whether such code would actually pass, before it would accept the City's offer of settlement as captured in the Proposed Settlement Agreement.

19. On January 25, 2011, the First Amendment to the Proposed Settlement Agreement was executed, a true and correct copy of which is attached hereto as Exhibit B.

20. Clear Channel staff initially worked with City staff on code development. In November 2010, I was asked by City staff to be the primary point of contact with Clear Channel. At that time I was asked by counsel for Clear Channel, and I agreed, to work

DECLARATION OF SHELLEY M. KERSLAKE IN
SUPPORT OF CITY OF TACOMA'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
CV 11-05747-BHS - 5

KENYON
DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

directly with Clear Channel staff on these issues, as it would be more efficient and cost effective.

21. In April/May 2011, it became apparent that there was public opposition to the City's settlement approach. In addition, there were new councilmembers who had not been involved in the prior litigation and who did not support the approach taken in the Proposed Settlement Agreement. On May 18, 2011, the Planning Commission did not recommend a code that allowed for digital billboards, but rather recommended a ban on digital billboards until such time as the impacts associated with this technology could be fully explored.

22. On June 10, 2011, I had a phone conversation with Michael Mayes, Clear Channel's Real Estate Manager and the primary point of contact for negotiations with the City, regarding the code changes and settlement. In that conversation, I told Mr. Mayes that the terms of the Proposed Settlement Agreement could not be implemented – that the public outcry against the digital billboard locations was too great and that a code that contained the terms outlined in the Proposed Settlement Agreement would not get enough votes on the Council to pass. I clearly told him that the City could "*not* go forward with the settlement." He readily agreed. He indicated that Clear Channel had heard the same comments at the public meetings and was aware that the terms would not work and that the "deal was dead." I gave him the courtesy of informing him that the Mayor would make comments to the effect that the Proposed Settlement Agreement could not be implemented at a public meeting on June 14, 2011. I further indicated that I hoped we could come up with a new agreement that would work for both parties.

23. On June 14, 2011, the Mayor of Tacoma, at a public meeting, did in fact

DECLARATION OF SHELLEY M. KERSLAKE IN
SUPPORT OF CITY OF TACOMA'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
CV 11-05747-BHS - 6



Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

indicate that the City would be developing a billboard code without regard to the Proposed Settlement Agreement. She indicated that she hoped that whatever code was developed would resolve the litigation – but clearly stated that it might not. *See* Attached Ex. C, a true and correct transcript of the Mayor's statement at the June 14, 2011 Study Session.

24. After Clear Channel acquiesced that the Proposed Settlement Agreement was "dead" and could not be implemented as drafted, I received a follow-up call from Michael Mayes on June 15, 2011. During this call, Mr. Mayes proposed new settlement terms. Under this new proposal, Clear Channel would place at least five, and possibly more, digital billboards along state routes. Mr. Mayes explained that in order to accomplish this new proposed billboard placement, state legislation would have to pass in the next session to allow it. He told me that he was confident that such legislation had a strong chance of passing and also proposed that as part of the "new deal," the City would need to support Clear Channel in lobbying for such legislation. He proposed that the parties consider a sunset provision in case the necessary legislation did not pass. Mr. Mayes asked that I convey these new deal terms to the Mayor of Tacoma to see if we could salvage a settlement. He also indicated that if we could not salvage a settlement, Clear Channel would have no choice but to litigate, as contemplated by the Agreement Re Dismissal (Dkt. No. 1, at 9-10).

25. The Tacoma City Council ultimately chose not to adopt a code to allow for the erection of digital billboards in the City, at this time. After the first reading of the proposed sign code ordinance, it was apparent that the Council did not consider such legislation to be in Tacoma citizens' best interest.

DECLARATION OF SHELLEY M. KERSLAKE IN
SUPPORT OF CITY OF TACOMA'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
CV 11-05747-BHS - 7

KENYON DISEND

Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

26. On May 31, 2011, I clearly communicated to counsel for Clear Channel that the Proposed Settlement Agreement could not be implemented and that I expected an unsuccessful final vote on the matter the following week - a vote to deny digital billboards. I communicated the City's desire to work on these issues with Clear Channel outside the confines of settlement negotiations. Clear Channel responded by signing the Proposed Settlement Agreement. It was not until *after* the City had revoked the offer to settle that Clear Channel executed the Proposed Settlement Agreement on July 27, 2011, just 13 days before the final vote on the sign code ordinance. The signed Agreement was transmitted to the City with a check for $100.00 that same day.

27. On August 9, 2011, the City passed a sign code ordinance that banned digital billboards in Tacoma. In so doing, the Council directed City staff to begin looking at digital technology citywide. Councilmembers acknowledged at the public meeting that digital signage may have a place in the community, if placed and regulated properly. They envisioned a process that would include stakeholders, such as Clear Channel, to participate in this discussion.

28. The City returned Clear Channel's $100.00 check on August 17, 2011, because the City's offer to settle had been withdrawn prior to the tender of the consideration.

I declare that the foregoing is true and correct subject to the penalty of perjury under the laws of the state of Washington.

DECLARATION OF SHELLEY M. KERSLAKE IN
SUPPORT OF CITY OF TACOMA'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
CV 11-05747-BHS - 8



Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071

1
2    DATED this 17th day of October, 2011 at Issaquah, Washington.
3
4
                                            __s/Shelley M. Kerslake_____
5                                           Shelley M. Kerslake, # 21820
                                            KENYON DISEND, PLLC
6                                           11 Front Street South
                                            Issaquah, Washington 98027-3820
7                                           Telephone: (425) 392-7090
                                            Fax: (425) 392-7071
8                                           E-mail: Shelley@KenyonDisend.com
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DECLARATION OF SHELLEY M. KERSLAKE IN
SUPPORT OF CITY OF TACOMA'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
CV 11-05747-BHS - 9



Kenyon Disend, PLLC
The Municipal Law Firm
11 Front Street South
Issaquah, WA 98027-3820
Tel: (425) 392-7090
Fax: (425) 392-7071