# Verbatim Transcript of Audio Recorded Proceedings
June 14, 2011

# Joint Tacoma City Council / Tacoma Planning Commission Study Session



## Byers and Anderson, Inc.
**Court Reporters/Video/Videoconferencing**
Seattle/Tacoma, Washington

scheduling@byersanderson.com
www.byersanderson.com

One Union Square: 600 University Street, Suite 2300 Seattle, WA 98101-4128
Seattle: **206 340-1316**  Toll Free: **800 649-2034**
Old Town District: 2208 North 30th Street, Suite 202 Tacoma, WA 98403-3360
Tacoma: **253 627-6401**  Fax: **253 383-4884**



Byers & Anderson Court Reporters/Video/Videoconferencing
Seattle/Tacoma, Washington

VERBATIM TRANSCRIPT OF AUDIO RECORDED PROCEEDINGS

EXCERPT OF

JOINT TACOMA CITY COUNCIL / TACOMA PLANNING COMMISSION
STUDY SESSION

June 14, 2011

Byers & Anderson, Inc.

Court Reporters/Video/Videoconferencing

One Union Square                2208 North 30th Street, Suite 202
600 University St.              Tacoma, WA 98403
Suite 2300                      (253) 627-6401
Seattle, WA 98101               (253) 383-4884 Fax
(206) 340-1316                  scheduling@byersanderson.com
(800) 649-2034                  www.byersanderson.com

Serving Washington's Legal Community since 1980

Byers & Anderson Court Reporters/Video/Videoconferencing
Seattle/Tacoma, Washington

Page 2

1 　　　　MAYOR STRICKLAND: I would like to
2 call to order the joint City Council Tacoma Planning
3 Commission study session for June 14th, 2011, and then
4 we're going to have our regular City Council study
5 session, followed by a closed session and executive
6 session. So we have a very, very long day here in Room
7 16 planned.
8 　　So we're going to start with the billboard sign code
9 amendments. At today's joint study session Tacoma
10 Planning Commission members and staff will provide an
11 overview of the Planning Commission's recommendations
12 related to the billboard code amendments, digital
13 billboards and the moratorium.
14 　　And before I call on our long range planning
15 manager, Donna Stenger, I'm going to do a bit of a
16 preamble here. I have some written comments, and I think
17 what I want to do is try and give this whole conversation
18 some context.
19 　　So for those of you who don't know, the discussion
20 about billboards in Tacoma started 28 years ago. So when
21 I was a junior in college we were talking about
22 billboards in Tacoma. From 1983 through 1988 a variety
23 of measures were enacted to control billboards in Tacoma.
24 In 1983, for example, there was a moratorium on
25 billboards on South Tacoma Way between 52nd and 56th

Page 3

1 Street. There were citywide regulations adopted in 1988
2 where there was a cap put on the total number of
3 billboards allowed in the city, and then in 1997 there
4 was a relocation ratio of one-to-one, where we would
5 remove one nonconforming billboard and rebuild it in a
6 conforming area. An amortization of nonconforming
7 billboards was introduced.
8 　　In 2007 Clear Channel sued the City of Tacoma, and
9 since 1997 -- 13 years -- not a single billboard was
10 removed. So in 2010 we entered into a settlement
11 agreement with Clear Channel totally to try to gain the
12 removal of what we desired in the least expensive way
13 possible.
14 　　And I think one of the things that's been lost in
15 the discussion about this issue is that we had to make
16 some choices here. This litigation is very costly, it
17 can drag on for a really long time, and we can still have
18 no change whatsoever in the number of billboards.
19 　　So what we have, really, as far as billboards go in
20 Tacoma is an amalgamation of various amendments, with
21 codifications and additions over time, instead of one
22 single, unified action by the City Council. We have a
23 patchwork quilt of regulations, and just as many
24 billboards up today as we did in 1997.
25 　　One of the things that's really changed since 1997

Page 4

1 is digital technology, and that really changes the
2 conversation about what's possible and our definition of
3 blight.
4 　　We gave the Planning Commission a very, very tough
5 assignment. We asked you to develop code language which
6 implemented the terms of our settlement agreement, as
7 well as developing performance standards for billboards,
8 and then we asked you to take that code out for public
9 review and for input.
10 　　We also recently passed a moratorium on billboards,
11 and this was forwarded to the commission for their review
12 and recommendation.
13 　　So here's where we are today: We now have the
14 planning commission's findings and recommendation
15 regarding the proposed billboard code language, and their
16 recommendation is pretty straightforward. They're here
17 today to present their recommendation, and then we get to
18 ask them questions. We will also have the opportunity to
19 review the very thorough PowerPoint presentation in our
20 agenda packet. And we thank you for that; it was very,
21 very good information.
22 　　And I want to talk about where we're going because
23 that's really where we need to spend our time. We
24 understand and respect that some people don't like the
25 settlement agreement, but we viewed it as a way to start

Page 5

1 the clock about how to get rid of the signs we didn't
2 want and how best to get the number reduced, and we now
3 understand a lot of these terms won't work. We've heard
4 concerns about billboards in residential areas, about
5 them in neighborhood commercial districts, near churches,
6 near schools, and we agree that signage needs to be
7 scaled appropriately.
8 　　We also heard that there are too many billboards.
9 We also heard from members of the business community who
10 say that billboards have a very express business need and
11 help small businesses and large businesses communicate to
12 their customers and get messages out. And.
13 　　We also heard from nonprofit organizations, ranging
14 from social services to arts organizations, who rely on
15 billboards as an effective advertising medium.
16 　　So here's what we're going to do: We're going to
17 take out the code revisions without regard to settlement
18 agreement terms. We're going to develop a code that
19 works for the City of Tacoma, and now we hope that the
20 new code can resolve the dispute and avoid more
21 litigation, but Clear Channel is not going to dictate the
22 terms of this.
23 　　So our task now is to develop a code that works for
24 the City. This may resolve our dispute with Clear
25 Channel, it may not, but we need to focus on what we want

Joint Tacoma City Council / Tacoma Planning Commission Study Session
June 14, 2011

152a70da-3937-4fea-b3f6-6baf1a83c9f1

Byers & Anderson Court Reporters/Video/Videoconferencing
Seattle/Tacoma, Washington

Page 6

1  the code to accomplish for the City of Tacoma.
2       So with that said, I'm going to turn this over to
3  Donna Stenger.  Donna.
4              (Excerpt concluded.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1   STATE OF WASHINGTON )   I, Cindy M. Koch, CCR, RPR, CRR,
                        ) ss CLR, a certified court reporter
2   County of Pierce    )   in the State of Washington, do
                            hereby certify:
3
4
        That the foregoing transcript was recorded on
5   June 14, 2011, and thereafter was transcribed under my
    direction; that the transcript is a full, true and complete
6   transcript, including all questions, answers, objections,
    motions and exceptions, to the best of my ability;
7
        That I am not a relative, employee, attorney or
8   counsel of any party to this action or relative or employee
    of any such attorney or counsel and that I am not
9   financially interested in the said action or the outcome
    thereof;
10
        That I am herewith securely sealing the said
11  transcript and promptly delivering the same to
    Attorney Shelley M. Kerslake.
12
        IN WITNESS WHEREOF, I have hereunto set my
13  signature on the 29th day of September, 2011.
14
15
16
17
18
19
20
21
22          _____
            Cindy M. Koch, CCR, RPR, CRR, CLR
23          Certified Court Reporter No. 2357.
24
25

3 (Pages 6 to 7)